**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Third-Party Plaintiff-Appellant,**

v.

**Thomas J. REIDY, Third-Party Defendant-Appellee.**

**No. 16205.**

United States Court of Appeals Seventh Circuit.

Nov. 16, 1967.

Edward J. Burke, Chicago, Ill., Kenneth L. Greenquist, Racine, Wis., for appellant.

Harry G. Fins, Chicago, Ill., for appellee.

Before SCHNACKENBERG, SWYGERT, and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

American Casualty Company instituted an action for a declaratory judgment to determine the extent of its obligations as surety on performance and payment bonds issued for Seymour Richards Construction Company. Later, American Casualty joined Thomas J. Reidy as a third party defendant. The third party action sought indemnification pursuant to an indemnity agreement executed on December 13, 1962, under which Reidy purportedly agreed to indemnify American Casualty for any losses suffered on bonds issued to Richards. Reidy moved to dismiss the third party complaint on the ground that the indemnity agreement was "invalid as a matter of law for indefiniteness." After both parties submitted affidavits, the district court granted Reidy's motion. The sole question in this appeal is whether the district court was correct in granting the motion to dismiss.

This controversy centers around a purported indemnity agreement embodied in a printed form of American Casualty entitled "Third Party Indemnity Agreement for All Kinds of Bonds." The agreement begins, "That whereas, * * * the American Casualty Company * * * has executed, or procured the execution of, or is about to execute or procure the execution of, or will continue its undertaking as surety upon * * * a bond or bonds. * * ' * " Following this statement, there is a blank on which were typed the words "Any and all bonds hereafter applied for by Seymour Richards Construction Co."[1] The words "Various Obligees" were typed on another blank line to indicate those in whose favor the agreement was executed. Then a printed paragraph followed which provides:

And, * * * the undersigned agree to be bound as Indemnitors upon such instruments of suretyship subsequently applied for, * * * to the same extent and under the same conditions as the undersigned have under this agreement become Indemnitors upon the *above specifically described and identified bond or bonds,* * * * (Emphasis added.)

After a number of other printed paragraphs, the date of the agreement and Reidy's name and address were typed in the appropriate places. The agreement was signed by Reidy and a witness, and was notarized.

In granting Reidy's motion to dismiss the complaint, the district judge indicated his reasons as follows:

Insofar as the description of bonds in this agreement is simply, * * * "Any and all bonds hereinafter applied for," there is no specifically described and identified bond from which the terms and conditions of these future bonds may be determined.

The agreement, as it stands, is clearly invalid for indefiniteness. * * * A holding of indefiniteness is made dou-

---

[1]. Specific directions on the form provide "this agreement may be extended to all types of bonds by adding 'Any and all bonds hereafter applied for by (Insert name of principal).' "

bly necessary here by the fact that the agreement covers all types of bonds, from contract bonds to jail bonds, which could have a great variety of terms.

But, actually, the real problem here is that the agreement itself is indefinite; there is no way * * * [to] determine what the terms and conditions of the agreement are, because there was no bond which set forth the particular terms and conditions under which the indemnitor agreed to be liable in case other future bonds were issued, * *

■ We believe that the district judge's rationale is inadequate to sustain the motion to dismiss. Although the purported agreement between Reidy and American Casualty was not as precise as it might have been, the document was specific enough to raise a factual issue about the existence of an undertaking on Reidy's part to indemnify American Casualty. The use of the phrase "any and all bonds," though condemned by the district judge, was not too vague as a matter of law when considered with the directions for the use of the same terminology in the agreement itself. Those particular words suggest that the parties might have contemplated some kind of a continuing relationship. In such instances, the words used must of necessity be less precise to insure the flexibility necessary to govern the relations of the contracting parties over a period of time.

■ The error in dismissing the complaint in this action was in part caused by the district judge's adoption of an incorrect standard for interpreting the purported agreement. We see no necessity to require that, as a condition of validity, the agreement refer to a specifically described bond. Assuming the existence of a valid agreement, the details of a specific bond could help to delimit the *extent* of Reidy's obligation to indemnify American Casualty for losses suffered on that particular bond; but the terms of a specific bond are not relevant in determining the *existence* of Reidy's obligation to indemnify American Casualty. Contrary to the reasoning of the district judge, the existence of that obligation depended on the terms of the indemnity agreement rather than on the terms of particular bonds issued by American Casualty to Richards.

■■ Apart from the district court's adoption of an incorrect standard of interpretation, the court erred in failing to consider the circumstances attending the execution of the purported agreement.[2] Neither Reidy nor American Casualty were novices in the surety business. In fact, Reidy stated that he had been in the insurance business for sixty-six years. For a substantial period prior to the execution of the agreement in question, Reidy was a director, the vice president, a business consultant, and the sole insurance agent for the Richards company. In these roles, Reidy could have been found to have been aware of the financial condition of Richards and of the need to provide assurance to bonding companies such as American Casualty before they would increase the Richards company's maximum bonding limit. Reidy had in the past furnished collateral to enable Richards to obtain the bonds necessary for its construction projects. These and other facts submitted to the district judge indicate that the purported agreement was not executed in a vacuum, but rather in the course of a continuing relationship between American Casualty, Richards, and Reidy. A consideration of that continuing relationship would have exposed factual issues bearing upon the exact nature of Reidy's undertaking.

**2.** Professor Corbin has commented upon the importance of such consideration in the following terms:

It is invariably necessary, before a court can give any meaning to the words of a contract and can select one meaning rather than other possible ones as the basis for the determination of rights and other legal effects, that extrinsic evidence shall be heard to make the court aware of the "surrounding circumstances," including the persons, objects, and events to which the words can be applied and which cause the words to be used. 3A Corbin, Contracts § 536, at 28 (1960).

A motion to dismiss a complaint for failure to state a cause of action is governed by Rule 12 of the Fed.R. Civ.P. Rule 12(b) provides that if matters outside the pleadings, as in this case, are not rejected by the court in passing on such a motion, the motion is to be treated as one for summary judgment and "disposed of as provided in Rule 56." To warrant the granting of a summary judgment under that rule, the papers must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As we recently stated in Greenebaum Mortgage Co. v. Town & Garden Associates, No. 16,066 (7th Cir. 1967), 385 F.2d 347, "In deciding whether there is an issue of material fact in a case, all doubts must be resolved against the party asking for summary judgment." For the reasons heretofore indicated, we believe the record disclosed sufficient factual issues to preclude the dismissal of the complaint summarily.

The order of the district court is reversed and the case is remanded for a trial.