WOZNICZKA *v.* MCKEAN ET AL. AND FIRST CHURCH OF CHRIST.

[No. 468A56. Filed May 6, 1969. Rehearing denied June 5, 1969. Transfer denied August 27, 1969.]

*Joel C. Levy, Daniel F. Kelly* and *Tinkham, Beckman, Kelly and Singleton,* all of Hammond, for appellant.

*Lester Murphy, Jr., Murphy McAtee Murphy & Costanza,* both of East Chicago, for appellees.

SHARP, J.—During the pendency of this appeal on the 24th of May, 1968, the Appellees filed a Motion to Dismiss or Affirm, which raised the following questions:

(1) That the "First Church of Christ of Whiting" was improperly designated as a party to this appeal.

(2) That the First Church of Christ is an unincorporated religious institution and is not registered and as such is an unincorporated religious association and not a legal entity which can sue or be sued in the association name.

(3) Failure of the Appellant's brief to comply with Rule 2-17(h) of the Rules of the Supreme Court.

With regard to the first contention it is clear that the Appellees are contending now that the proper designation should be "First Church of Christ" rather than "First Church of Christ of Whiting." In this regard, it is stated in Rule 2-6 of the rules of the Supreme Court that "failure properly to name parties will not be treated as jurisdictional." Furthermore, it would appear that the

Appellees have waived any objection to any such misnomer. See *Vogel v. Brown Township,* 112 Ind. 299, 14 N. E. 77 (1887); *Watson v. Burnett,* 216 Ind. 216, 23 N. E. 2d 420 (1939). It is also clear that the proper procedure for raising the question of misnomer is by a Plea in Abatement in the trial court rather than a Motion to Dismiss or Affirm in this court. See Burns' Ind. Stat. Ann., § 2-1034. It would appear the record is clear that the Appellees entered a general appearance in the trial court and therefore waived any matters, including misnomer, which could have been raised by a special answer in abatement.

In the case of *Simons v. Kosciusko Building, Loan & Savings Association,* 180 Ind. 335, 103 N. E. 2 (1913), there was a suggestion that there was a lack of jurisdiction because the word "Savings" was omitted from the name of the defendant. In 180 Ind. at page 338, 103 N. E. at page 3, our Supreme Court stated:

> "If appellant's position be well taken as to the insufficiency of the complaint on account of the omission of the word 'Savings,' his appeal here should be dismissed, for the reason that he has omitted it from the assignment of errors, while the judgment is in favor of the Kosciusko Building, Loan and Savings Association. Both positions are too narrow. The omission was doubtless clerical in each instance, but in the circuit court it was a matter which might have been amended at any time, and it will be so treated here, besides the note and mortgage, articles of association, and the constitution and by-laws will control the caption of the complaint."

This case is brought as a class action and the designation of the class is apparent from the face of the complaint. See Burns' Ind. Stat. Ann., § 2-220.

Also, Burns' Ind. Stat. Ann., § 25-1501, provides that voluntary associations for religious purposes made by statute hold title to land.

It would appear that a class action in this context would be authorized under the authority of *Slusser v. Romine,* 102

Ind. App. 25, 200 N. E. 731 (1936) ; and *Lynch v. Holy Name Church*, 133 Ind. App. 492, 179 N. E. 2d 754 (1962).

Without burdening this opinion with extensive citations of authority, we believe that the Appellant's brief is in substantial compliance with Rule 2-17(h) of the Rules of the Supreme Court. See *Wylie v. Meyers*, 238 Ind. 385, 150 N. E. 2d 887 (1958).

For the above reasons the Appellees' Motion to Dismiss or Affirm, which was held in abeyance by order of Joseph O. Carson, Chief Justice, is hereby overruled and we now proceed to a consideration of this appeal on its merits.

The merits of this case are concerned with the propriety of granting summary judgment for the Defendant-Appellees under § 2-2524, Burns' Ind. Stat. Ann., Acts 1965, ch. 90, § 1, which is identical to Rule 56 of the Federal Rules of Civil Procedure. Other recent statements by this court regarding the propriety of summary judgment are in *Mayhew et al. v. Deister et al.*, 144 Ind. App. 111, 244 N. E. 2d 448 (1969); *Newcomb v. Cassidy*, 144 Ind. App. 315, 245 N. E. 2d 846 (1969); *Houston v. First Federal Savings & Loan Association of Gary*, 144 Ind. App. 304, 246 N. E. 2d 199, 17 Ind. Dec. 125 (1969).

This instant case was initially filed in the trial court on the 30th of December, 1966. The essential allegations of the plaintiff's amended complaint are as follows:

"1. That the plaintiff was born June 1, 1947, and is an infant under twenty-one (21) years of age and brings this action by and through his natural father and next friend, ANTHONY WOZNICZKA.

"2. That the FIRST CHURCH OF CHRIST OF WHITING is an unincorporated religious institution and maintains a church composed of members of that faith in Whiting, Indiana, the defendant, CHESTER McKEAN, is Treasurer and the defendant, CLARKE FLEMING, is Financial Secretary; and the defendants, CLARKE FLEMING, ANTHONY BRENKUS and NOBLE HOKE, are present mem-

bers ·of the Board of Trustees of the church; and GEORGE GILMAN was a member of the Board of Trustees of the church on May 19, 1953.

"3. That on or about March 19, 1953, the FIRST CHURCH OF CHRIST OF WHITING, INDIANA was designated as the owner of the following described property in the City of Whiting, Lake County, Indiana, to-wit:

"All of Lots 11, 12, 13 and the North half of Lot 13, Block 7, of Central Park Addition to Whiting, Indiana, and more generally described and known as 1827-1829 Central Avenue, Whiting, Indiana.

"4. That the membership of said church constitutes a class so numerous as to make it impracticable and impossible to bring them all before this Court; that the named defendants constitute representatives of the class of members as will thoroughly insure the adequate representation of all such members of the church, and the character of the rights sought to be enforced against the class is joint and common to all members of said class; and that each of the members of said class has an interest in the property owned by said church and on which property the plaintiff herein was injured.

"5. That on said property the defendants erected a church on the north side of said property and running from Central Avenue to an alley parallel to Central Avenue at the rear and on the south side of said property erected a parsonage.

"6. That on the date mentioned the defendants maintained in the yard to the rear of the parsonage on the above-described property containers for the burning of trash and other materials and said containers were located to the rear of said property above described and adjacent to said alley.

"7. That at or about 2:00 P.M., on the above, mentioned date and on the above-mentioned property, the plaintiff, THOMAS WOZNICZKA, was playing in the yard of the defendants' property with CARLA MC CREARY and MURRAY MC CREARY, who were children of the church's custodians and employees, Carl and Lavada McCreary, and the plaintiff had done so on many previous occasions.

"8. That at said time and place there was a fire burning in the container hereinabove referred to and the plaintiff was injured when his suit caught fire when coming in contact with said fire.

"9. That the injury to the plaintiff was proximately caused by the negligence of the defendants, to-wit:

"(a) Starting a fire on defendants' property and leaving same unattended with full knowledge that young children frequently played on the defendants' property and in the vicinity of said fire.

"(b) Leaving a fire unattended on its property with knowledge that young children were playing in the vicnity of said fire.

"(c) Leaving a fire unattended on its property with knowledge that young children frequently played on the defendants' property in the vicinity of said containers used for burning trash.

"(d) Using a wire container for burning trash which was open, exposed and unsafe for said purpose and from which container flames, ashes and heat were emitted to the general area.

"(e) Placing a wire container for burning trash in an open area with knowledge that young children played in the area where said container was placed and offering no fence, barrier or other protection to said children from the dangers of burning and starting fires in said container.

On October 23, 1967, the Appellees filed their unverified Motion for Summary Judgment which had attached to it parts of a deposition taken at the instance of the Appellees of the Appellant, Thomas Wozniczka. The Motion for Summary Judgment stated:

"Comes now the defendants herein, pursuant to Burns' Annotated Indiana Statutes, Vol. 2, Part 1, 1965 Pocket supplements § 2-2524, and move the Court to grant a summary judgment on plaintiff's Amended Complaint on the following ground:

"Plaintiff is a college student, twenty years of age, and alleges in his Amended Complaint that approximately fourteen (14) years ago the defendant church, an unincorporated religious institution, maintained a church and adjacent thereto a parsonage, that plaintiff went upon said premises and while playing with children of the church custodian was burned upon coming in contact with a fire

burning in a wire container used for burning trash at the rear of the parsonage property. Plaintiff alleges that the defendant church was negligent in leaving unattended the fire in the burning can with knowledge that children frequently played in the vicinity and that no fence or barrier has been placed around the same. It is obvious from plaintiff's Amended Complaint and his deposition that his status was, at best, a licensee by sufferance. The only theory upon which the defendants could have conceivably breached any duty owed to this plaintiff is if the attractive nuisance doctrine applies to the fact situation alleged in his Amended Complaint, as modified and supplemented by his sworn testimony contained in his deposition.

"The defendants submit that, as is obvious from plaintiff's deposition, relevant parts of which are attached hereto marked "exhibit A" and made a part hereof by reference, the plaintiff admittedly had been warned and was aware of the danger of fire, that the fire in question was not an attractive item, that the danger of the fire was patent and latent, and that plaintiff did not go upon the premises in question due to the presence of the fire thereon, but rather played thereby chance, and therefore for each and all of said reasons, the attractive nuisance doctrine does not apply in the instant case and the plaintiff does not have a cause of action against the defendants herein, therefore, the defendants are entitled to the granting of the instant Motion for Summary Judgment."

On January 3, 1968, the trial court granted the summary judgment as follows:

"The Court having considered, now grants Defendants' motion for summary judgment, does now enter judgment against the Plaintiffs and that they take nothing by their complaint. Costs against the Plaintiffs. Judgment."

The only evidentiary material before the trial court other than the pleadings referred to were parts of the deposition of the plaintiff, Thomas Wozniczka. It is important, preliminarily, to emphasize the following language of our statute, Burns' Ind. Stat. Ann., § 2-2524(c), which language is identical to the comparable part of Federal Rule 56 and reads as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law."

The function and duty of the trial court is simply stated in Vol. 3, Federal Practice and Procedure, Barron & Holtzoff (Wright Ed.), § 1236, at page 157, which states:

"On a motion for summary judgment, the formal issues presented by the pleadings are not controlling and the court must consider the affidavits and other matters presented by the parties to determine whether the motion should be granted. It has been stated that the court should take the pleadings as they have been shaped to ascertain what issues of fact they make and then consider the affidavits, depositions, admissions, answers to interrogatories and other similar material to determine whether any of the issues are real and genuine. On such a motion the court considers the entire setting of the case and all papers of record. The pleadings as a whole and not merely the complaint are considered. In addition to the pleadings the court considers affidavits, admissions, stipulations, depositions and answers to interrogatories which are submitted for or against the motion."

A timely demand for trial by jury had been filed in this case.

The unverified Motion for Summary Judgment filed by the Appellees on October 23, 1967, was supported by parts of the deposition of the Appellant, Thomas Wozniczka, which deposition was taken at the instance of the Appellees on August 19, 1967, at a time when the Appellant was approximately 20 years of age. The evidence, pleadings and inferences in this regard must be viewed in the light most favorable to the Appellant, plaintiff below, as the party against whom summary judgment was sought. The trial court also had before it the answers to interrogatories by the Appellees which disclosed that Carl and Lavada McCreary were the custodians of the Appellee church when the

Appellant was injured on March 19, 1953, and resided in quarters located on the church premises in the back part of the church.

The deposition of Thomas Wozniczka disclosed that he was five years old at the time of the incident which occurred on March 19, 1953, and resided with his parents near the church in question and was enrolled in kindergarten. On the date in question he had come home from kindergarten and had lunch at his parents' home which was approximately one block from the Appellee church. Between 1 and 2 o'clock P.M. he proceeded to play with a friend, Karen, who lived nearby. March 19, 1953, was a cold winter day and the Appellant was wearing a snowsuit. He and Karen went across the alley to play with the children of Mr. and Mrs. McCreary, the custodians of the church. Their children were Carla McCreary and Murray McCreary, ages 4 and 3 respectively. The McCreary children lived in an apartment in the rear of the church building. The minister of the church lived on the property owned by the church on the lot adjacent to the church. There was no yard behind the church but there was a yard next to the church. The children, therefore, went to play in the minister's yard next to the church, which was owned by the Appellee church. The children had played in the yard approximately 20 minutes when the Appellant was injured. A fire was burning in a wire trash container which was located on a small cement platform inside the yard and near the alley to the rear of the property. The Appellant testified further by way of deposition that he was attracted to the fire and that he was poking the fire through the wire basket with a stick. He further testified that he didn't know what attracted him to the fire but there was "just something different, something that I didn't understand." He had not yet attained his sixth birthday at the time of the incident in question. He testified his mother had told him that fire might hurt him. He noticed the fire before he came upon the church premises, and he was playing around the fire and

occasionally poking it with a stick. The children were around the fire because it was cold. The fire was composed of newspapers and he was not sure what else. The fire burned throughout the 20 minutes Appellant was on the premises. The trash container was four or five feet high and approximately two and one-half feet in diameter and the wire was approximately one-sixteenth to one-eighth inches. The wires were approximately two to three inches apart so that a stick could be placed through them. The appellant had played in the same yard with the same children on previous occasions. The left leg of his snowsuit caught on fire and he does not know whether it caught from the stick or from standing too close to the burning can. He ran home with the suit on fire and the flames got bigger on his snowsuit as he ran home, apparently fanned by the motion of running. He testified that the McCreary children always played in this yard and that it was "in effect their yard as tenants of the church." He had played in this same yard with them before.

The sole question involved in this appeal is the propriety of the trial court's granting a summary judgment for the Appellees in this case. In order to determine this case it is necessary to discuss the following points:

(1) The legal status of the Appellant, a five year old child, non sui juris while he was on the Appellees' property and the duty arising therefrom and any breach of this duty.

(2) The proper function of summary judgment, particularly in negligence cases.

There is no serious contention that the Appellant on the property of the Appellees at the time of the incident in question was an invitee. In view of the opinion of Judge Cook of this court in *Brown v. Kujawa*, 142 Ind. App. 310, 234 N. E. 2d 509 (1968), the status of the Appellant, at most, was that of a licensee or licensee by permission or sufferance. The general duty owed a licensee or licensee by permission

or sufferance is accurately stated in West's Indiana Law Encyclopedia, Vol. 21, § 36, *Negligence,* at page 295, which states:

"The duty owed by a person who owns or is in charge of premises to another on such premises as a licensee without invitation, express or implied, has been said ■ to be the same as the duty owed by him to a trespasser. Generally there is no affirmative duty to exercise care with respect to a mere licensee or licensee by permission, and no duty to protect him from injury. The usual statement of the general rule is that the only duty an owner or occupant of premises owes to a bare licensee thereon is not to injure him willfully or wantonly.

"The owner or occupant of premises is not under any legal duty to a mere licensee to keep the premises free or safe from dangers of obstructions, pitfalls, excava- ■ tions, trapdoors, or openings in floors. A licensee by permission or a mere licensee takes premises as he finds them and he goes there at his own risk and enjoys the license subject to its concomitant perils, and the owner is not liable for any injuries resulting to him owing to defects in the conditions of the premises.

"On the other hand, if the owner of premises discovers the presence of a licensee in a situation of peril, he may not do an affirmative act which might reasonably ■ be expected to increase the peril, and he should use reasonable care to avoid injuring the licensee after his danger is discovered. Likewise the owner has the duty not to set traps for a licensee, not knowingly to expose him to a hidden peril, and to protect him from active negligence."

It is undisputed in this case that the plaintiff was a five year old child, non sui juris.

There are two areas of extention to the general rule stated as to licensees or licensees by permission or sufferance. The factual context of the cases in these two areas of extension are often similar and sometimes indistinguishable. One of these extensions is the doctrine of attractive nuisance. In this regard both of the parties agree that this is not an attractive nuisance case and that the Plaintiff-Appellant is

not attempting to recover upon an attractive nuisance theory. A second extension is reflected in § 40 at page 301 of West's Indiana Law Encyclopedia, which states:

"The rule that one is bound to exercise ordinary care to avoid injury to a mere licensee or trespasser who is discovered in a position or situation of peril, as considered supra §§ 36-38, applies with respect to children of tender years, and knowledge, actual or constructive, of the presence of an infant licensee or trespasser in a position of peril imposes on the owner or occupant of premises the duty to exercise reasonable care in the use of his property so as not to injure the child, and the amount of care required to be exercised may be greater than that necessary in the case of an adult.

"The probable presence of children on property where a dangerous activity is being carried on, imposes a duty of ordinary care on the owner of such property to anticipate their presence by keeping a lookout for them, and such duty applies not only with respect to children under seven years of age, but may apply to older children whose presence the owner has reason to expect. If he is bound to know of the presence of children he must also know from common experience that they are frequently heedless of danger, and he should not start in motion something that is likely to cause their injury. If the probable presence of children on the premises raises a duty to them of ordinary care, such duty may be violated before the children arrive on the premises, by leaving things undone which should have been done in anticipation of their coming, but the duty of care arising from the probable presence of children on the premises is relative rather than absolute."

The general common law duty is well stated in 65 Corpus Juris Secundum, *Negligence*, § 63(58) at page 779, which states:

"Generally, a person exposing dangerous articles or instrumentalities on his premises in such a manner that children are likely to come in contact therewith to their obvious danger should reasonably anticipate the injury that is likely to occur and is bound to take reasonable care to prevent it . . . This duty may exist even though the dangerous thing is not an attractive nuisance."

It is significant that the above citations refer to the opinion of Judge Bobbitt in *Neal, Admr. v. Home Builders, Inc.*, 232 Ind. 160, 111 N. E. 2d 280 (1953). That opinion in 232 Ind. at page 180, 111 N. E. 2d at page 290, states:

"It is the law of Indiana that persons who maintain a dangerous agency or instrument on their premises owe a duty to infants and adults alike to use reasonable care to protect or guard the dangerous agency or instrument, or give timely warning of such condition after having knowledge of the same. And where the person could have reasonably anticipated that children or other persons might come into contact with the dangerous agency or instrument, and such a contact is reasonably sure to inflict serious injury, he should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact therewith.

"A semi-constructed dwelling house is, in our opinion, not a dangerous agency or instrument within the meaning of the rule above stated.

"While under the circumstances in the *Harris* case, *supra*, there may have existed the duty to guard the high voltage tower in question, but, if so, it arose by reason of the inherently dangerous condition of the tower due to a specific independent act of negligence of the company (defendant). This is not the circumstance presented in the case at bar, and it does not follow that if under the circumstances in the *Harris* case the company owed a duty to trespassers or licensees by sufferance or by permission to guard the tower, that appellees owed a duty to the children of appellant to barricade the entrance to the semi-constructed dwelling house to keep them and other children in the vicinity who might come there to play from entering on the premises. The duty here, if any, arose after the children of said deceased had become licensees by sufferance. Appellee's owed no legal duty to keep appellant's children off their premises (out of the semi-constructed dwelling). The authorities in Indiana and other jurisdictions support this conclusion."

This general rule of tort law has also been stated in Restatement of Torts, *Negligence*, Vol. 2, § 342, at page 932, which states:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein."

Comments on § 342(b) are particularly relevant:

"If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it.

"On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein. Children, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover."

See also § 339 of the Restatement, which states:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor' knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in inter-

meddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

It is necessary to examine in some detail the Indiana cases and certain cases from other jurisdictions as examples of the extent to which these general doctrines of the common law have been applied in cases involving the duty to infant licensees by sufferance or infant trespassers and particularly infants who are persons non sui juris.

In the *City of Indianapolis v. Emmelman*, 108 Ind. 530, 535, 9 N. E. 155, 157 (1886), our Supreme Court stated:

"Whoever, therefore, does anything in, or immediately adjacent to a public street, calculated to attract children of the vicinity into danger, which they cannot appreciate, owes the duty of protecting them by suitably guarding the source of danger, or in case this is impractical, by giving timely warning to their parents and guardians of the existence of the danger."

See also, *Sherfey v. City of Brazil*, 213 Ind. 493, 502, 13 N. E. 2d 568, 572, (1938) where our Supreme Court stated:

"To knowingly suffer a pit or depression in the ground containing live coals of fire, the presence of which are concealed or undisclosed, to exist in a place where children of immature years may be expected to assemble and play, without taking reasonable steps to warn or protect them against the dangers thereof, may be actionable under the common law of this state. (Citations omitted.) We hold, therefore, that appellant's amended complaint states a good cause of action on the theory of the violation of a common-law duty, unless the complaint discloses on its face that the action was barred by reason of appellants's failure to give the statutory notice."

In another early case our Supreme Court in *Penso v. Mc-Cormick*, 125 Ind. 116, 122, 25 N. E. 156, 158 (1890), stated:

"It is a well-recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them, even when they are trespassers."

In the case of *Indiana Refining Co. v. Summerland*, 92 Ind. App. 429, 432, 173 N. E. 269, 270 (1930), this court stated:

"A person who places in the hands of a child an article of dangerous character and one likely to cause injury to the child is guilty of negligence, and is liable if such negligence is the proximate cause of the injury."

In *Cleveland, etc. R. Co. v. Means*, 59 Ind. App. 383, 405, 104 N. E. 785, 792 (1914), this court stated:

"The owner of the premises owes the adult licensee no duty of active vigilance to discover his presence or his surroundings while on his premises by permission only, because such adult is presumed to go there with the understanding that he will take the premises as they are, with all the uses to which the owner may subject them while there, and that he will look after his own safety and welfare, and that he has discretion and judgment to do so. In other words, the owner of the premises does not know and has no reason to anticipate that such adult licensee will place himself in a situation of peril. To indulge such an assumption when a child licensee of immature years, judgment and discretion is involved would be against our common understanding and reason and lacking in every element of humanity and justice. Constructive knowledge on the part of a railroad company that children non sui juris are on its tracks, or probably will be on its tracks, at a particular place, of necessity, carries with it knowledge of the peril or probable peril and helpless condition of such children, and hence the viligance or care, which in the first instance was only negative in character, may become affirmative in the second instance and require that the company in such case shall, in some degree, at least, exercise for the child the care and vigilance which it must

know the child is unable to exercise for itself, and, must not, by an affirmative act of omission or commission, expose such child to a danger which it knows, or has reason to believe is unknown to and not understood or appreciated by such child. The duty of ordinary care which the owner of premises owes to the child licensee thereon is recognized and affirmed even in those jurisdictions which refuse to recognize or apply the attractive nuisance doctrine, as evidenced by the case of *Wheeling, etc., R. Co. v. Harvey, supra.*"

In *Neal v. Home Builders, Inc., supra,* in 232 Ind. at page 174, 111 N. E. 2d at page 287, our Supreme Court said:

" 'Inherently dangerous' means that danger is contained in and is an inherent part of the constitution of the instrumentality or condition itself, at all times, in such a manner as to require special precautions to prevent injury, not simply danger arising from mere casual or collateral negligence of others. *Brown v. City of Craig* (1943), 350 Mo. 836, 168 S. W. 2d 1080, 1082; *Emery v. Thompson* (1941), 347 Mo. 494, 148 S. W. 2d 479, 480; *Fackrell v. City of San Diego* (1945), 26 Cal. 2d 196, 157 P. 2d 625, 629, 158 A. L. R. 773; *Vale v. Bonnett* (1951), 89 U. S. App. D. C. 116, 191 F. 2d 334, 339."

In this regard see also, *Wise v. Southern Ind. Gas & Electric Co.,* 109 Ind. App. 681, 34 N. E. 2d 975 (1941) ; and *Drew v. Lett,* 95 Ind. App. 89, 182 N. E. 547 (1932). In the latter case, at page 549 of 182 N. E., page 95 of 95 Ind. App., this court stated:

"The questions of the particular child's ability to appreciate the danger, and his power to avoid it, are usually questions of fact for the jury."

A recent decision based upon Indiana law decided by the United States Court of Appeals for the Seventh Circuit is particularly relevant for its facts, reasoning, and result. See *Echevarria v. United States Steel Corp.,* 392 F. 2d 885 (7th Cir. 1968). The facts in this case are particularly revealing. The plaintiff had a mental capacity of *five* and was playing

with a brother age eleven and a half and a friend age fifteen on a public playground when he saw a pigeon flying and attempted to catch it and in doing so went through a hole in the playground fence, across the railroad tracks onto the plant of the United States Steel Corporation, followed the pigeon which had flown to the top of the defendant's high voltage electrical transformer by climbing a ladder to the roof of the building, went across the sloping roof to a point opposite the transformer, climbed over the top of a parapet and extension of the wall and slid from a projecting drain pipe down to the top of the transformer which was 18 to 24 inches west of the wall. In conclusion, the court stated at page 892 of 392 F. 2d:

> "Finally, defendant's contention that the court erred in submitting the case to the jury rests in the main upon the defense it sought, without success, to interpose. For reasons shown, the facts that Plaintiff, an infant non sui juris, was a trespasser, that the transformer was located on defendant's premises, or that defendant was without knowledge of plaintiff's presence, do not as a matter of law absolve it of liability. The most plausible point which defendant makes on this score is that its transformer was located some 11' above ground and it could have had no reason to anticipate that plaintiff or any other person would come in contact with it. This argument, however, is considerably diluted by the fact that defendant furnished a ladder which made the top of the building adjacent to the transformer easily accessible. This ladder was little less than an invitation to a boy such as plaintiff to use it in pursuit of his childish fancy of chasing a pigeon. We have previously stated in some detail the evidence relating to this point, which we need not repeat.

> "We conclude that the case was properly submitted to the jury ..."

While we are certainly not bound by the *Echevarria v. United States Steel Corporation* case, *supra,* as precedent, we believe that it is a logical and accurate application of the law of Indiana.

The holding and reasoning in *Echevarria v. United States*

*Steel Corporation, supra,* is parallel to and consistent with the statement of this court in *Brush v. Public Service Co. of Indiana,* 106 Ind. App. 554, 562, 21 N. E. 2d 83, 86 (1939), as follows:

"Generally speaking it is true that the duty of the owner or occupant of the premises to a person injured thereon depends to some extent on whether such person was there as a trespasser, or as licensee by permission or passive acquiescence only or as a licensee by the inducement or invitation express or implied of such owner or occupant. The duty as expressed by our courts in general terms is to the effect that the owner or occupant of premises owes no duty to the trespasser thereon, except to refrain from wilfully or intentionally injuring him after discovery of his presence. *Cleveland, etc., R. Co. v. Means* (1915), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375."

"We recognize that there are exceptions to the general rule, such as cases to which the attractive nuisance doctrine and the doctrine of last clear chance have been applied and *cases where children and persons non sui juris are likely to come in contact with a dangerous force. Cleveland, etc., R. Co. v. Means, supra; Fort Wayne, etc., Traction Co. v. Stark* (1921), 74 Ind. App. 669, 127 N. E. 460; *Terre Haute, etc., Traction Co. v. Sanders* (1923), 80 Ind. App. 16, 136 N. E. 54; *Harris v. Indiana General Service Co., supra."* (Our emphasis)

It is also helpful to examine in some detail the extent to which courts in other jurisdictions have applied the common law doctrines above discussed. In *Brannon v. Harmon,* 56 Wash. 2d 826, 830, 355 P. 2d 792, 794 (1960), the Supreme Court of Washington stated:

"It is undisputed that the condition in question was a fire. *The inherent danger of fire cannot be doubted."* (Our emphasis)

While that case is an attractive nuisance case it is important for its analysis of the particular fire involved. It is also important because it involved summary judgment under a rule similar to our Indiana statute on summary judgment.

The trial court had granted summary judgment for the defendant and the Washington Supreme Court reversed stating that the record disclosed a factual record and status upon "which it cannot be said the defendants were entitled to judgment as a matter of law." The case involved a burn sustained by a three and a half year old child.

In *Specht v. Waterbury Co.*, 70 Misc. Rep. 404, 127 NYS 137 (1911), was a case involving a six year old girl who was injured trying to get a wire which was stuck in a bonfire. The court stated at page 142 of 127 NYS:

> "It appears to me to be a very hard rule which holds the question of his (defendant's) negligence is not to be submitted to a jury as against this 6 year old child. I doubt that if an open box of poison candy with the contents conspicuously displayed toward the street would have any greater attraction to a six year old child then this fire."

More recently in *Lam v. Board of Education Cent. Islip U.F. Sch. Dist.*, 53 Misc. 2d 238, 278 NYS 2d 264 (1965), a New York Court reaffirmed its position in a case involving burns sustained by a 7 year old boy. There is very strong language that a fact question is presented for the jury.

In a recent case decided by the Supreme Court of Florida in *Idzi v. Hobbs*, (Fla.), 186 So. 2d 20 (1966), a five year old child received injuries from a fire a homebuilder set to burn underbrush and materials stacked four feet high. The defendant in that case knew the children had been playing in the area and the child tried to poke at the fire, stepped on a log and slipped into the fire. At page 22 of 186 So. 2d, the court stated:

> "While the fact that a child has been warned of a danger may be enough to defeat his recovery, where it is found to be effective in making him fully aware of the situation, it is appreciation of the danger which is required to bar recovery, rather than mere knowledge of the existence of the condition itself, and where the child is too young to

understand, or not sufficiently impressed to forego the attractive hazard, the warning may be found not to relieve the defendant of liability, if he could reasonably be expected to do more.

"It was for the trier of the facts whether or not this minor plaintiff sufficiently discovered the condition or realized the risk involved. The mere knowledge that he had of the existence of the fire, and the mere fact that sometime in the past he had been instructed about the danger of fire, does not necessarily mean that he realized the risk involved in intermeddling in it or in coming within the area made dangerous by it. Because of his immaturity and want of judgment a child may be incapable of understanding and appreciating, or making intelligent decisions on, all of the possible dangers which he may encounter.

"An examination of the instruction proffered by the plaintiff and refused by the court, to wit, 'A child of tender years may be expected to conform only to that standard of conduct that is to be reasonably expected of a child of its age, intelligence and experience under like circumstances,' adequately states the care to be expected from a child and should have been given."

In *Carr v. Southern Pennsylvania Traction Co.*, 253 Pa. 274, 98 A. 554 (1916), which involved a fire upon the premises in which a four year old child came from a nearby street and was severely burned, the evidence showed that the lot was frequently used by the children as a playground. At page 555 of 98 A., page 277 of 253 Pa., the Supreme Court of Pennsylvania stated:

"Under the testimony, the question of the negligence of the defendant's employees in leaving unattended a fire upon the premises, so situated that children playing in the vicinity might be drawn to it to their injury, was for the jury. That the fire was kindled upon a windy day, and left unguarded upon a lot which was of easy access from the street, and that the children of the neighborhood had, from time to time, been permitted to play upon the lot was not denied."

For a more recent statement, see also, *Simmel v. New Jersey Coop Co.*, 28 N. J. 1, 143 A. 2d 521 (1958).

In *Doren v. Northwestern Baptist Hospital Association,* 240 Minn. 181, 186, 60 N. W. 2d 361, 367 (1953), the Supreme Court of Minnesota stated:

". . . when an artificial condition involving risk to children is maintained where children are known to play a degree of diligence greater than under ordinary circumstances is required of the property owner.

. . . . .

"True, defendant did not owe the duty of keeping constant watch over its premises to prevent trespass thereon, but it would seem to be a fact question whether it might not have made the area where the known dangers existed more secure against the children's entry or otherwise more effectively safeguarded the dangerous condition there maintained. Had the jury determined that defendant exercised more than ordinary care to exclude children or to safeguard a dangerous condition, it would follow that the four conditions required had not been established. The jury, however, determined that the four conditions were established, and implicit therein is the determination that defendant had not exercised the degree of care required."

We would also emphasize as the court emphasized in the case of *Echevarria v. United States Steel Corporation, supra,* that the Appellant in this case was an infant non sui juris and therefore incapable of any contributory negligence as a matter of law. See *Terre Haute I. & E. Traction Co. v. Stevenson,* 73 Ind. App. 294, 126 N. E. 34 (1920); *Meineke v. Hollowell,* 136 Ind. App. 324, 200 N. E. 2d 541 (1964); and see also, Vol. 21, West's Law Encyclopedia, *Negligence,* § 102.

The second important aspect of this case concerns itself with the proper use of our summary judgment statute, Burns' Ind. Stat. Ann., § 2-2524, which, as previously stated, is patterned after Rule 56 of the Rules of Federal Procedure. There are some basic and fundamental underlying considerations which must always be considered in the granting or denying of summary judgment. An early expression of the attitude of this court was expressed in *Jose v. Indiana Na-*

*tional Bank,* 139 Ind. App. 272, 276, 218 N. E. 2d 165, 167 (1966), where the court stated:

"[T]his court closely scrutinizes adjudication on the pleadings with a narrow eye, ever vigilant for a possible error and will not hesitate to reverse a decision if an error be found unless the error itself was harmless and reversal would serve no useful purpose."

In *Poller v. Columbia Broadcasting System,* 368 U. S. 464 (1962), the Supreme Court of the United States made it very clear that the federal summary judgment rule authorized summary judgment only when the moving party was entitled to judgment as a matter of law and that "the purpose of the rule is not to cut litigants off from their rights to trial by jury if they really have issues to try." See also, *White Motor Co. v. United States,* 372 U.S. 253 (1963), and *Free v. Bland,* 369 U.S. 663 ( 1962). There have been many expressions from the United States Court of Appeals for the 7th Circuit which are highly relevant to the proper consideration and determination of summary judgments by our trial courts. In *Greenebaum Mortgage Co. v. Town and Garden Associates,* 385 F. 2d 347 (7th Cir. 1967), the court stated at page 349:

"In deciding whether there is an issue of material facts in a case, all *doubts* must be resolved against the party asking for summary judgment."

See also, *Carter v. Williams,* 361 F. 2d 189 (7th Cir. 1966); *Moutoux v. Gulling Auto Electric,* 295 F. 2d 573 (7th Cir. 1961); *Progress Development Corp. v. Mitchell,* 286 F. 2d 222 (7th Cir. 1961); *Zahora v. Harnischfeger Corp.,* 404 F. 2d 172 (7th Cir. 1968); *Carrano v. Scheidt,* 388 F. 2d 45 (7th Cir. 1967); and *American Casualty Co. of Reading, Pa. v. Reidy,* 386 F. 2d 795 (7th Cir. 1967).

There are recent Federal cases to the effect that if there is "the slightest doubt" or "any doubt", summary judgment

should not be granted. See *National Screen Service v. Poster Exchange, Inc.*, 305 F. 2d 647 (5th Cir. 1962) and *Cox v. American Fidelity and Casualty Co.*, 249 F. 2d 616 (9th Cir. 1957).

In Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.), Vol. 3, § 1235, at pages 138-142, the rule for the burden of proof in summary judgment is stated as follows:

> "One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact. Any doubt as to the existence of such an issue is resolved against him. The evidence presented at the hearing is liberally construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences which might reasonably be drawn from the evidence. Facts asserted by the party opposing the motion and supported by affidavits or other evidentiary material, must be taken as true.

> "Under these principles, what showing must be made by the party opposing a summary judgment? It is clear that a hearing on a summary judgment motion is not a trial on the merits, and that the court on such a motion should not attempt to resolve conflicting contentions of fact; the party opposing the motion is required to show only that there is a genuine issue to be tried and not that he will prevail at the trial. On the other hand, the whole purpose of the summary judgment procedure would be defeated if a case could be forced to trial by a mere assertion that an issue exists, without any showing of evidence. Because of this it is sometimes held that on a motion for summary judgment both parties should fully disclose what the evidence will be on the issue involved, and a party may not withhold evidence which he intends to use at the trial. It seems doubtful, however, whether the parties need go quite that far. It should be enough to disclose merely sufficient evidence by affidavits or by use of discovery methods to demonstrate that there is a material issue of fact to be submitted for decision by the trier of the facts." (footnotes omitted)

In the 1968 Pocket Supplements to Barron & Holtzoff under § 1237 of Vol. 3 at page 109, it states:

"Since the moving party must show that he is entitled to prevail as a matter of law while the opposing party need only show that a genuine controversy as to the facts exists, the provisions of Rule 56(e) are enforced more strictly against the movant than the opposing party."

In *Brunswick Corp. v. Vineberg*, 370 F. 2d 605, 612 (5th Cir. 1967), the court stated:

"Summary judgment is a lethal weapon and the courts must be mindful of its aims and targets and beware of overkill in its use."

If there is a question as to the state of mind, credibility of witnesses or weight of testimony, summary judgment should be denied. See *Alabama Great Southern Railroad Co. v. Louisville and Nashville Railroad*, 224 F. 2d 1, (5th Cir. 1955); *Subin v. Goldsmith*, 224 F. 2d 753 (2d Cir. 1955); *Alvado v. General Motors Corp.*, 229 F. 2d 408 (2d Cir. 1956); and Barron & Holtzoff, Vol. 3, § 1234, at page 134.

In the context of summary judgment procedure the negligence cases present special problems and special considerations. In this regard Barron & Holtzoff, § 1232.1, in part, states:

"Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. A study made in one district showed that in 292 negligence cases pending in a particular year, only one motion for summary judgment was made and that was denied. It would be a mistake to conclude from such figures that summary judgment is never appropriate in a negligence action.

"Summary judgment has been properly granted on motion by defendant in negligence cases where it conclusively appeared that plaintiff was barred by law from recovery. In some cases defendant has shown that the person who committed the tort was not defendant's agent, and thus defendant was not responsible for his conduct. In other cases plaintiff has been shown to be not within the class entitled to recover under a particular act. In still other cases

plaintiff was found to have surrendered such rights as he might have had. Of course this does not mean that all negligence actions are to be decided on motions for summary judgment where defendant raises a legal defense; in most such cases there are issues of fact relating to the defense, and the motion will be denied. But where there is no genuine issue as to any material fact, and the defense is good as a matter of law, the motion should be granted.

"Issues of negligence and contributory negligence generally have to be tried, although there are some instances in which it may appear that even if the facts as claimed by the plaintiff are proven, there can be no recovery. Summary judgment for the defendant is proper in such a case. Even where there is no dispute as to the facts, it is, however, usually for the jury to say whether the conduct in question met the standard of the reasonable man. Accordingly motions for summary judgment where such issues were involved have usually been denied. But just as there are some cases in which the court is justified in directing a verdict or granting judgment notwithstanding the verdict in a negligence case, so also there have been some cases in which it has been held proper to grant summary judgment on issues of negligence." (footnotes omitted)

Because of the peculiarly elusive nature of the term negligence and the necessity that the trier of facts pass upon the reasonableness of conduct in all of the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where historical facts are concededly undisputed. See *Gauck v. Meleski,* 346 F. 2d 433 (5th Cir. 1965). Summary judgment proceeding does not provide a very satisfactory approach in tort cases. See *Williams v. Chick,* 373 F. 2d 330 (8th Cir. 1967); and *Larsen v. General Motors,* 391 F. 2d 495 (8th Cir. 1968). We do not say that summary judgment is never appropriate in a tort-negligence case. However, it will be appropriate only in a rare case. Such a rare case was *Personett v. Great Atlantic and Pacific Tea Co.,* 142 Ind. App. 698, 237 N. E. 2d 281 (1968). This instant case is not such a rare case.

On a motion for summary judgment with no opportunity

to evaluate demeanor of witnesses it is not the function of the court to determine whether the affiant is telling the truth or that he seems persuasive. *American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F. 2d 272 (2d Cir. 1967). A case is not one to be decided on summary judgment where, though the basic facts are not disputed, parties in good faith may nevertheless disagree about inferences to be drawn from the facts. See *Hart v. Johnston,* 389 F. 2d 239 (6th Cir. 1968). See also, *Massengale v. Transitron Electronic Corp.,* 385 F. 2d 83 (1st Cir. 1967); *Williams v. Pacific Maritime Association,* 384 F. 2d 935 (9th Cir. 1967); and *Moran v. Bench,* 353 F. 2d 193 (1st Cir. 1965).

Even if it may be surmised that the adverse party is unlikely to prevail at trial this is not sufficient to authorize summary judgment. Courts cannot or should not withhold summary judgment merely because it would save time or expense. See *American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theaters, Inc., supra.* See also, *Van Horn v. Gulf Atlantic Towing Corp.,* 388 F. 2d 636 (4th Cir. 1968).

Pleadings must be construed liberally in favor of the party opposing summary judgment. See *Smoot v. Chicago R.I. & P. Railroad Co.,* 378 F. 2d 879 (10th Cir. 1967); and *Duarte v. Bank of Hawaii,* 287 F. 2d 51 (9th Cir. 1961).

The requirement that summary judgment be granted only if there is no genuine dispute as to any material fact is to be strictly construed so as to insure that factual issues will not be determined without benefit of the truth seeking procedures of a trial. *Jackson Tool & Die, Inc. v. Smith,* 339 F. 2d 88 (5th Cir. 1964). The party seeking summary judgment has the burden of demonstrating *clearly* the absence of any genuine issue of fact. See *Associated Hardware Supply Co. v. Big Wheel Distributing Co.,* 355 F. 2d 114 (3rd Cir. 1965). Where the court is in doubt

as to whether genuine issues of material fact exist, it has discretion to postpone consideration of a motion for summary judgment until after a hearing on the merits. See *Williams v. Howard Johnson's, Inc. of Washington*, 323 F. 2d 102 (4th Cir. 1963).

In view of the record in this case, considered in the light most favorable to Appellant, the party against whom summary judgment was sought, and resolving all doubts in his favor, can we say as a matter of law that the Appellant under no circumstances has a valid cause of action against the Appellees upon which the trier of fact might find for the Appellant? We believe the answer must be in the negative. There are a number of genuine issues of fact manifest from the record which must be resolved by the trier of fact. They are:

(a) The status of the Appellant at the time of the injury, i.e., whether he was licensee by permission or trespasser.

(b) The nature and capacity of this particular 5 year old boy to understand the danger of this particular fire.

(c) The nature of this particular fire and its composition.

(d) Whether under all the circumstances this fire was a dangerous agency as to this 5 year old child.

(e) The extent to which the Appellees had knowledge that Appellant was on their premises at the time the fire was burning.

(f) The extent to which the Appellant and other small children had used the Appellees' yard as a playground.

(g) The extent to which the container was unsafe, considering the presence of a 5 year old child.

(h) The extent to which the danger from this fire was open (patent) or hidden (latent).

We are not stating that under all circumstances, under the law of Indiana, a fire is a dangerous agency. The law of other jurisdictions is certainly not unanimous on this point. We are saying that in this case, under all the circumstances,

the trier of fact could determine that this particular fire was a dangerous agency as to this particular 5 year old boy. The jury could find that this fire was an artificial condition which was likely to be dangerous to a 5 year old child.

The Appellees rely heavily on *Neal v. Home Builders, supra.* The *Neal* case covers 49 pages in the Indiana Reports, including separate and vigorous dissents by Judges Emmert and Gilkison. The court simply held in *Neal* that a stepladder extending from the first to the second floor of a building under construction was not an artificial condition which was inherently dangerous. The sole act of negligence charged was the failure to barricade the entrance to the house so as to prevent children from playing in it. The child plaintiff in *Neal* was 8 years old. We believe a careful examination of the complaint in the instant case will indicate that it succeeds where the complaint in *Neal* fails. The complaint in the instant case is one of much broader mold than in *Neal* where it was limited to the so-called "rescue doctrine."

Considering what we have said, there are genuine issues as to material facts which must be decided by the jury. Therefore, the judgment of the trial court granting summary judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

Reversed. Costs v. Appellees.

Pfaff, C.J., and Hoffman, J., concur. White, J., concurs in result.

NOTE.—Reported in 247 N. E. 2d 215.