HENRY E. LEISTIKOW *v*. HOOSIER STATE BANK OF INDIANA ET AL.

[No. 272A107. Filed May 9, 1972.]

*Owen W. Crumpacker, Harold Abrahmson, Kenneth D. Reed, Crumpacker, Abrahamson & Reed,* of Hammond, for appellant.

*Harold C. Wagner,* of Hammond, for appellee.

SHARP, J.—This action was initiated by the Appellee, Hoosier State Bank of Indiana (hereinafter Bank) upon a complaint to reform a real estate contract and to have said contract declared forfeited and terminated. The Bank also sought to have possession of the premises, to have its title quieted and damages. Appellant, Henry E. Leistikow, filed a cross-complaint wherein he alleged that the Bank and the other individual appellees had violated the terms of an agreement to reconvey certain property and sought damages.

Extensive depositions were taken of all the individual parties and they are contained in a supplemental record of over 600 pages. Based on the information contained in the depositions, the Bank filed a Motion for Summary Judgment both as to its complaint and Appellant's cross-complaint. Numerous affidavits, counter-affidavits, supplemental counter-affidavits and rebuttal affidavits were filed. Thereafter, on October 19, 1970, the trial court granted the Bank's Motion for Summary Judgment and rendered judgment in favor of the Bank on its complaint and against Appellant on his cross-complaint. The question of the amount of damages was deferred to a later time.

Appellant filed his motion to correct errors, which was overruled. The two issues presented here for review are whether the trial court erred in granting summary judgment in favor of the Bank on its complaint and whether the trial

court erred in granting summary judgment in favor of the Bank and individual cross-defendants-appellees on Appellant's complaint.

We are thus confronted with the question of whether there is a genuine issue as to a material fact so as to preclude the granting of summary judgment. In determining whether there is a genuine issue as to a material fact, this court must resolve all doubts against the party moving for summary judgment. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215 and cases cited therein. By *Wozniczka* this court has adopted the Federal test to the effect that if there is "the slightest doubt" or "any doubt," summary judgment should not be granted. The evidence must be "liberally construed in favor of the party opposing the motion and he is to be given the benefit of all favorable inferences which might reasonably be drawn from the evidence," *Wozniczka, supra,* citing Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.), Vol. 3 § 1235.

With these principles in mind we look to the evidence as shown by the depositions and affidavits. Early in 1959, Leistikow sold a retail hardware store and with the proceeds purchased a 75 acre tract of real estate near Crown Point, Indiana, for the purpose of development. Shortly thereafter Leistikow and his wife purchased under contract an additional 150 acres immediately south of the first tract.

After these acquisitions Leistikow surveyed out 3.75 acres from the first purchase and constructed a ranch house thereon. A $22,000.00 loan was obtained and was secured by a mortgage on the improved property. At approximately the same time Leistikow sold off two ten acre tracts from the 150 acres acquired under contract. When Leistikow had difficulties obtaining releases and deed from the vendors he found it necessary to procure a loan from the First National Bank of Crown Point in the sum of $55,000.00 to pay off the vendor under the sales contract. Leistikow and his wife signed a promissory note for that amount and executed a mortgage on all the real

estate then owed by them. The mortgaged property was divided into three tracts totaling 205 acres which consisted of 3.5 acres of improved real estate, 71.5 acres of unimproved real estate and 130 acres of unimproved real estate.

Sometime in 1964, Leistikow, together with a partner, decided to open a restaurant in Highland, Indiana. In regard to this venture, Leistikow received two $10,000 loans from the Bank, which were supposedly secured by second mortgages on the above described real estate, but which were carried on the Bank's ledgers as unsecured loans. Also, in 1964, Appellant Leistikow, received a $20,000 loan in order to construct a second house. Part of said loan went to obtaining a release of the first mortgage. Upon retaining the release, Leistikow and his wife executed a first mortgage in favor of the Bank on the tract of land containing the second house and it is this tract that was the subject of Appellee's complaint here.

The 201 acres of unimproved real estate will hereafter be considered in toto and be referred to as the farm property. The second house, upon which the Bank had a first mortgage, will hereinafter be referred to as the home.

In 1965, the restaurant ran into financial difficulties and Leistikow arranged to borrow sums of money and executed various mortgages in favor of the Bank.

On August 16, 1965, in order to secure additional financing, Henry E. Leistikow and his wife placed title to all their property in the name of the Bank under a land trust with the Bank as trustee. Simultaneously therewith, the Leistikow's executed and delivered an assignment of the beneficial interest in said trust to the Bank to serve as security for an additional $25,000.00 loan and also as further collateral security for any indebtedness then owing to the Bank or that might be owing in the future.

Since the above transaction resulted in the Bank acquiring a junior lien or mortgage on the farm property in contravention of IC 1971, 28-1-13-7, Ind. Ann. Stat. § 18-1307 (Burns

1964), the beneficial interest in the farm was further assigned to Clarence Harney's mother and sister. Clarence Harney was at that time an officer of the Bank and had dealt with the Leistikows on many occasions. The evidence is conflicting as to who actually furnished the money to the Leistikows under the note. It is further unclear whether Harney's mother and sister actually paid off the Bank for the assignment. However, it is revealed that the Bank made a $11,500.00 loan to the mother for the purpose of purchasing the assignment from the Bank.

Finally, Henry Leistikow found a purchaser for the ranch house and needed to obtain a release of the first mortgagee, the First National Bank of Crown Point. In some way, the precise manner of which being factually in dispute, the Crown Point Bank received the proceeds of the sale of the ranch house plus $18,000.00, which represented the balance due under the note and mortgage. Thereafter, the note and mortgage were endorsed in blank and ultimately ended up being recorded on April 6, 1967, with the names of Gladys Harney Ross and Clarence H. Harney or the survivor thereof as assignees. The $18,000.00 used to pay the balance of the note and mortgage came from a loan from the Bank to Gladys Harney Ross. The purpose of the assignment was to place the first mortgage on the farm in hands friendly to the Bank, i.e., Harney, who was an officer thereof.

Henry E. Leistikow filed a voluntary petition in bankruptcy on January 31, 1967. Subsequent thereto, the Bank instituted foreclosure actions against the two properties, with Clarence Harney and Gladys Ross being made party defendants to the foreclosure of the farm. The Bank was the highest bidder on the home and Clarence Harney and Gladys Ross, the assignees of the first note and mortgage, were the highest bidders on the farm. Each received a sheriff's deed to their respective properties. The Bank allowed the Leistikows to remain in possession of the home and finally entered into a written contract to reconvey the property back to the Leistikows.

Clarence Harney wrote the contract and at the same time was negotiating with Leistikow for repurchase of the farm. There was no reconveyance of the farm and as a result Leistikow defaulted on his payments on the home and the Bank filed its complaint.

The above recitation of the chronological events giving rise to this controversy is by no means complete but it will suffice for the purpose of this opinion. The basic question is whether or not there was an agreement regarding the reconveyance of both the farm and the home after foreclosure and discharge in bankruptcy. There were definite negotiations between Clarence Harney and Henry E. Leistikow concerning the reconveyance of the farm property. It is a question of fact whether the reconveyance of the home was contingent upon reconveyance of the farm and whether the transactions were part and parcel of the same transaction and mutually contingent upon the performance of both.

In this regard it becomes important to delve into the multifarious hats worn by Clarence Harney in the various transactions with Leistikow that percipitated this controversy. Considering the evidence before us, there exists a question of fact as to the capacities occupied by Harney vis-a-vis Leistikow. There are disputes as to whether Harney was acting in his own behalf or as an agent for the bank and whether he and his family were mere nominees of title to conceal the real ownership of the various mortgages and assignments involved in this controversy.

Even if, as Appellees argue, the Bank ultimately did not own or have control of the farm property, there could still have been an agreement on its part to reconvey said property in conjunction with the reconveyance of the house and each reconveyance could have been contingent upon the other. Leistikow, in his cross-complaint, was not seeking specific performance but damages for breach of the agreement.

Our holding is buttressed by the depositions and affidavits filed in this case. Especially relevant is the affidavit of the

attorney for the Bank, who states that the purpose of his affidavit is:

". . . (3) To help in determination of credibility of various individuals who have participated in events affecting this cause of action."

Other affidavits are of similar import and are clearly contrary to *Wozniczka, supra,* where this court, at page 229 of 247 N. E. 2d 215, stated:

"If there is a question as to the state of mind, credibility of witnesses or weight of testimony, summary judgment should be denied."

But the Appellees have further sought to argue that the issues are framed by the pleadings and that they contain no mention of the farm property. All that need be said in this regard is this controversy is controlled by the Rules of Civil Procedure, which now authorize notice pleadings and are exceedingly liberal in allowing amendments to the pleadings to cause them to conform to the evidence under Trial Rule 15 (B). An examination of the record in this case clearly indicates that the depositions and affidavits were directed to the entire transaction, or series of transactions, between the parties, involving both the home and the farm.

Considering all that has been said, we hold that there were genuine issues as to material facts which must be decided by the jury. Therefore, the judgment of the trial court granting summary judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

Staton, J., concurs; Robertson, P. J. (by designation), concurs.

NOTE.—Reported in 281 N. E. 2d 893.