## Davis, Director General of Railroads *v*. Keller.

[No. 12,289. Filed January 7, 1926. Rehearing denied June 9, 1926.]

1. NEGLIGENCE.—*Complaint for failure of railroad trainman to give attention to child injured by train held insufficient.*—In an action by a child injured by a railroad train while playing near the track, a paragraph of the complaint charging negligence only in the failure of defendant's employee, a trainman, to give plaintiff proper attention after knowledge of its injury, and which did not allege that said employee knew that plaintiff was injured by the train and that the injury was such as to create an emergency demand for his attention, was insufficient. p. 15.

2. RAILROADS.—*Railroad's duty to care for injured licensee or trespasser arises only where immediate attention is necessary to save life or prevent great injury.*—The duty of a railroad company to care for an injured licensee or trespasser arises only, if at all, out of strict necessity and urgent exigency, where immediate attention thereto is demanded in order to save life or prevent great injury, and ends when the emergency expires. p. 15.

3. RAILROADS.—*Trainman's failure to care for injured licensee held not proximate cause of injury subsequent to accident.*—In an action against a railroad company for injury to a licensee by its train, evidence that the plaintiff was promptly attended to after the injury, and that one of the trainmen telephoned for a doctor within five minutes of the injury, and that, within fifteen minutes, he was attended by three physicians, including the one called by the trainman, sufficiently showed that the alleged negligence of the latter in not caring for the plaintiff after knowledge of his injury was not the proximate cause of subsequent injuries. p. 16.

4. RAILROADS.—*Track and right of way not "attractive nuisance" although children played thereon.*—A railroad track with switch passing by end of street which was not separated from railroad right of way by fence, over which railroad people passed and where children played, was not an "attractive nuisance." p. 17.

5. RAILROADS.—*Injury to child on unfenced track not actionable.*
—In the absence of the "attractive nuisance" element, no duty
rests upon a railroad company to fence its right of way except
as required by statute, and an action cannot be maintained
against it for damages for injury to a child which wandered
on the right of way at a point where it was not fenced as
required by law. p. 17.

6. RAILROADS.—*Railroad not liable for injury to child playing on
right of way which left place of safety and attempted to climb
on moving train.*—A railroad company is not liable for injury
to a child by one of its trains where the child had been playing
on the right of way where it was not fenced and where chil-
dren were accustomed to play, but, as the train approached,
the child left a place of safety and, after the engine of the train
had passed, attempted to climb on a car and was injured, as
it owed the child no duty to warn it of the approaching train
or to stop the train or check its speed (*Cleveland, etc., R. Co.
v. Means*, 59 Ind. App. 383, distinguished). p. 18.

7. PLEADING.—*Defendant's motion to require plaintiff injured by
railroad train to state where he was as train approached should
have been sustained.*—In action against a railroad company for
injuring a child which had been playing on its right of way
where children might be expected to be on or near the track,
the negilgence charged being the failure to give warning sig-
nals of the approach of the train causing the injury or to keep
a lookout for children on or near the track, defendant's mo-
tion to require the plaintiff to state where the child was as the
train approached should have been sustained. p. 18.

8. RAILROADS.—*Complaint for injury to child on right of way
by train which did not allege where child was as train ap-
proached held insufficient.*—In an action against a railroad
company for injuring a child which had been playing on its
right of way where children might be expected on or near the
track, the negligence charged being the negligent operation of
a train as it approached the child, a paragraph of complaint
which did not aver that the child was on the track or in a place
of danger as the train approached, was insufficient on demurrer.
p. 19.

9. PLEADING.—*Motion to require plaintiff to allege facts sup-
porting conclusion in complaint should have been sustained.*—In
an action by a child against a railroad company for injuries
by one of defendant's trains, the negligence charged being that
a trainman, with knowledge of the injury, negligently failed to
render any aid, or to assist the child to its home or to some
other place where immediate medical aid could have been given,
the complaint alleging that "by reason of plaintiff being left

unassisted as aforesaid, his injuries were greatly increased and aggravated," the defendant's motion to require the plaintiff to state how far it was from the place of the accident to his home and how much time elapsed after the accident before plaintiff was taken to his home and before he received medical or surgical aid, should have been sustained. p. 19.

From Vigo Superior Court; *William T. Gleason,* Judge.

Action by Maxwell Keller against James C. Davis, Director General of Railroads. From a judgment for plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*Beasley, Douthitt, Crawford & Beasley,* for appellant.
*George H. Wells, H. B. Aikman, John O. Piety* and *Shirley, Whitcomb & Dowden,* for appellee.

NICHOLS, C. J.—On July 5, 1918, while the railroads of the country were under federal control, appellee was injured by a moving train operated by the Director General of Railroads. This action is for damages resulting from such injuries. The amended complaint upon which the cause was tried was in three paragraphs.

In the first paragraph, no attempt is made to charge negligence in respect to the operation of the train. It is alleged therein that appellee was six years of age, *non sui juris,* and that as he and another boy of the same age were playing "along, near to and on the west side" of the railroad, the appellee "got so near said train" that he was struck and injured by cars to the rear of the engine; that one of the employees in charge of the train stationed on the rear end thereof saw and knew that appellee was injured and that he was unattended by anyone except the other child. It is then alleged that this one employee "carelessly and negligently failed and refused to alight from said train and render aid to such child and assist said child to its home or to some other point where immediate medical aid

could be had; and carelessly and negligently failed and refused to cause such train to stop so that he or some other employee of the defendant might give aid to such child and take such child to some place where immediate medical aid could be had. And plaintiff says that said employee carelessly and negligently failed to report such injury until a period of 40 minutes had elapsed."

It is then alleged that by reason of said carelessness and negligence of said employee appellee was permitted to and did move about upon the right of way so that there was a great loss of blood, and that dirt came in contact with his wounds, which became infected by reason of such loss of blood and dirt and by reason of his not receiving immediate medical aid.

Appellant filed a written motion to require appellee to make his first paragraph of complaint more specific by alleging the facts, if any, to support the conclusion contained therein that "the said carelessness and negligence as herein set forth and alleged was and is the proximate cause of plaintiff's said condition."

Said motion was overruled by the court and appellant then filed a demurrer to said first paragraph on the ground that said paragraph did not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court and appellant then filed an answer in general denial. It is alleged in said second paragraph that Blackman street ended on the east side of the railroad, that there was no fence on the east side of the railroad at the end of Blackman street, that there was a fence on the west side of the railroad about twelve feet from the railroad, that there was a gate in the fence and a path leading to the gate and that more than seventeen trains passed over the railroad daily and at the place where the accident occurred; that children of tender years used the railroad and right of way as a playground and would jump on and hang to the passing

trains; that such facts were known to the director general and his predecessors, and that on July 1, 1918, appellee, in company with another boy of the same age, six years, was playing on and near the switch at said place, at and near the end of Blackman street and between the switch and fence on the west side thereof; that, as they were so playing, appellant ran from the north one of his said trains of coal cars which overreached the switch more than twenty inches, along said switch at a speed of twenty miles per hour, by the end of said Blackman street and over said playground, and the cars to the rear of the engine of said train struck the plaintiff and injured him. The said second paragraph then charges that appellee "received said injuries on account of the wrongful, careless and negligent acts of the defendant in this, to wit: That the defendant on said day, wrongfully, carelessly and negligently ran one of his coal trains of empty coal cars from the north of said switch and along the same, and by and near the end of said Blackman street as aforesaid, and over said playgrounds at twenty miles per hour, without keeping a look-out for children on and near the switch; and without having any watchman to warn such children, including plaintiff, of its approach; and without giving any signals of the approach of said train; and without maintaining a fence on the east side of its right of way; and without stopping said train or checking its speed until plaintiff had gotten from between said defendant's said switch and said fence and struck and injured the plaintiff as aforesaid."

Appellant filed a motion to require appellee to make said second paragraph more specific by alleging the facts, if any such facts existed, to show where appellee was as the train approached the place of the accident, which motion the court overruled. Appellant later filed a second motion to require appellee to make his second

paragraph of amended complaint more specific, by alleging facts, if any there were, to show that the alleged negligence in the operation of the train was the proximate cause of the alleged injury, which second motion was overruled. Appellant then filed a demurrer to the second paragraph of amended complaint, for want of facts, which was overruled, and appellant then filed answer to said second paragraph.

The third paragraph of amended complaint alleges the same facts as are alleged in the second paragraph in respect to the alleged negligence in the operation of the trains, and the same facts that are contained in the first paragraph in respect to the alleged failure of the appellee to receive immediate medical aid and assistance after the injury by the cars to the rear of the engine, with the additional charge that the servant who saw appellee after the accident knew that his injuries would be greatly increased and aggravated unless immediate medical aid was provided for him, and that, after the accident, appellant carelessly and negligently failed to render any aid or report the injury for a period of forty minutes. Appellant moved the court to require appellee to make the third paragraph more specific by alleging the facts, if there were any, to show that the alleged negligent acts and omissions complained of, constituted the cause of the alleged injury. But the court overruled said motion.

Appellant then demurred to such third paragraph, for want of facts, which demurrer was overruled.

The cause was tried by a jury which returned a verdict in appellee's favor for $10,000.

Appellant's motion for a new trial was overruled and the court gave judgment on the verdict in appellee's favor and against the appellant for $10,000 and costs, from which judgment, appellant prosecutes this appeal.

It is to be observed that in the first paragraph there

is no charge of negligence against appellant as to the operation of the train, or of any other act of negligence that resulted in appellee's injury. The negligence therein charged was appellant's failure to give appellee proper attention after his injury. Appellee was not an employee, and at most but a mere licensee. In other jurisdictions, it has been held that where a person, whether a bare licensee or a trespasser, is injured without fault on the part of the railroad company, it is not liable because its employees do not take charge of and care for such person after the accident. *Union Pacific R. Co.* v. *Cappier* (1903), 66 Kans. 649, 72 Pac. 281, 69 L. R. A. 513; *Griswold* v. *Boston, etc., R. Co.* (1903), 183 Mass. 434, 67 N. E. 354; 33 Cyc 774; *Adams* v. *Southern R. Co.* (1899), 125 N. C. 565, 34 S. E. 642; *Riley* v. *Gulf, etc., R. Co.* (1913), 160 S. W. (Tex. Civ. App.), 595.

If the courts of this state have decided this question, we do not find the decision, though in *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 644, 104 N. E. 866, attention is directed to this rule in other states. But, aside from this question, we must hold that this paragraph of complaint does not state a cause of action. There is no averment that appellant's employee knew that appellee was injured by appellant's train, or that he knew that appellee was so injured as to create an emergent demand for the employee's attention. Certainly, until appellant had such knowledge, and thereafter failed to render first aid, he could not be charged with neglect. There could be no duty resting upon appellant to furnish assistance unless there was a known emergency. The duty of a railroad company only arises, if at all, as to a bare licensee or trespasser out of strict necessity, and urgent exigency, where immediate attention thereto is demanded in order to save life or prevent great injury. *Ohio, etc., R. Co.* v. *Early, Admx.* (1895), 141 Ind. 73, 81, 40 N. E. 257, 28

L. R. A. 546. And such duty ends when the emergency expires. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co., supra.*

While it is averred that the employee did not report the injury until forty minutes after the accident, it does not appear that such alleged negligence was the proximate cause of appellee's alleged injuries subsequent to the accident. It does not appear by this paragraph of complaint that appellee did not receive all the aid he needed as soon after the accident as such aid could have been procured if said employee had not been guilty of the alleged omissions. But, while we may not test the complaint by the evidence, we may say that, on the contrary, it does appear by the undisputed evidence that Mrs. Jessie Keller, the mother of appellee, who lived about a block from the place of the accident, learned of the accident as she was stepping off her porch, before the train was out of sight. She immediately ran to the place of the accident, two other women having preceded her, or arrived at about the same time. Charles Morgan, an employee of appellant, but not then on duty, saw the women running, and went to the place of the accident himself. When he saw what had happened, he immediately went to a telephone and called the telephone operator and told her to get a doctor as soon as possible. He then called the yard master at Jackson yards, about a mile away, who immediately ordered a doctor and an ambulance. In the meantime, the women carried appellee home, and in about five minutes, a doctor arrived, and in about five minutes more two more doctors, one summoned by appellant's employees, arrived. Chronologically, the train left Jackson yards at 7:10 p. m. running about twenty miles per hour. At 7:15, the yard master learned by telephone from Morgan of the accident. He ordered his yard clerk to call a doctor and an ambulance, and went himself to

the home of appellee, arriving at 7:25 p. m. When he arrived, the three doctors were there. With these undisputed facts before us, it seems that the alleged negligence of appellant's trainman was of but little consequence.

The gravamen of both the second and the third paragraphs of complaint, as stated by appellee, is that the injuries of appellee resulted proximately from the negligent acts and omissions of appellant in running and operating its train, and as averred in the amended third paragraph, in negligently aggravating the injuries so inflicted, and in causing appellee's permanent disability by failing to furnish him first aid. Appellee contends that the operation of the train under the conditions alleged in these paragraphs of complaint was negligent, and that it was the duty of appellant to safe-guard the place where appellee was injured, termed by appellee a "playground," either by proper lookouts, or by physical guards. As we view these paragraphs of complaint, the doctrine of attractive nuisance has no application. There was no dangerous and attractive machinery or other device that induced children including appellee to visit the place of the accident. There was simply a railroad, with a switch, passing by the end of a street from which it was not separated by a fence, over which railroad people passed to a pasture lot on the west side, and in which end of street and right of way, children were in the habit of playing, of which facts appellant knew. In the absence of the attractive nuisance element, there was no duty resting upon appellant to fence its right of way except as required by statute, and as expressly held in *Baltimore, etc., R. Co. v. Bradford* (1898), 20 Ind. App. 348, 49 N. E. 388, 67 Am. St. 252, an action cannot be maintained against a railroad company for damages for the death or injury

of a child which wanders upon the railroad track by reason of the same not being fenced as provided by statute. The court, in that case, pertinently asks the question: "What manner of fence could a body of lawmakers describe which would be sufficient to prevent children from going upon the right of way of a railroad company?" And then says: "Certainly no fence which would be sufficient to turn horses, cattle, sheep and hogs, as is specified in our law, would offer much of an obstacle to the ordinary boy four years old and upward, who might conclude in the absence of parental care, to climb over it."

Under the facts as alleged, and in harmony with *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, so confidently relied upon by appellee, we hold that appellee was at most but a licensee by permission. In that case, the court, after stating the rule as to adults to the effect that the railroad company is not required to check the speed of the train or to stop when it discovers an intruder, that it is only required to give timely warning of the approach of the train, and that it has a right to assume that the intruder will leave the track, then states the rule: "In case of children or infants, however, they may not indulge such a presumption, but must at once arrest the speed of the train as soon as they discover the children, or by the exercise of ordinary care, ought to have discovered them, on the track or in a place of danger. This rule also applies to helpless adults who may be on the track or in a place of danger, when their helplessness is discovered, or, by the exercise of ordinary care, ought to be discovered." Many authorities are cited to sustain this rule, and we certainly have no quarrel with it. But in the instant case, there is no averment in either the second or the third paragraphs of complaint that appellee was either on the track or in a place of danger

as the train approached. Appellant, by motion to make more specific, asked that appellee be required to allege facts showing where appellee was as the train approached, but this motion was overruled. We think that it should have been sustained. It is clear, however, from the averments that he was not in a place of danger as the train approached, for it appears that he was not struck by the engine, but by cars in the rear of the engine. By fair interpretation of the averments, appellee went from a place of safety to a place of danger after the engine passed. This is in harmony with the undisputed evidence of two women who saw the accident. From their evidence, it appears that appellee and his playmate were several feet from the track, over by the fence, as the engine passed, and that after three or four cars passed, appellee approached the train and attempted to climb on it, when he fell and was injured. Of course, we may not use these undisputed facts in testing the complaint, but they confirm us in our interpretation of the pleading. We have, then, the appellee in a place of safety as the train approached, and not, as in the Means case, on the track or in a place of danger, and to whom appellant owed the duty of warning him of his danger before moving the train. Here appellee knew of the presence of the train, and the failure to sound the whistle or ring the bell, or the speed of the train could not have been the proximate cause of appellee's injury. Appellant was not required to anticipate that appellee would go from a place of safety to a place of danger as the train passed. The case is clearly distinguished from the Means case.

It is averred in the third paragraph of complaint that appellant, with notice and knowledge of its employee that appellee had been injured, carelessly and negligently failed to render any aid, or to assist appellee to his home, or to some other place where

immediate medical aid could be furnished, and carelessly and negligently failed to report said injury until forty minutes had expired, and that by reason of appellee being so unassisted, his injuries were greatly increased and aggravated. Appellant's motion to make this paragraph more specific in this regard asked that appellee be required to state how far it was from the place of the accident to appellee's home, how much time elapsed after the accident before appellee was taken to his home, how much time elapsed before appellee received medical or surgical aid, and that appellee be required to state the facts to support the statement that "by reason of plaintiff being left unassisted as aforesaid his injuries were greatly increased and aggravated." This motion was overruled. Had the motion been sustained, and appellee required to set out the facts to sustain his conclusions averred, he would have been compelled, in harmony with the facts disclosed by the undisputed evidence, to have averred facts that would have made his third paragraph, as to this element, insufficient.

We hold that the demurrer to the second paragraph of complaint should have been sustained. Having reached the conclusions above set out, we deem it unnecessary to pass on other questions presented.

The judgment is reversed, with instruction to the trial court to sustain the respective demurrers to the first and second paragraphs of complaint and to sustain the motion to make the third paragraph more specific as to the assistance appellee received after the injury, as indicated above.