GARY C. CLAYTON b/n/f WILLIE CLAYTON AND WILLIE CLAYTON *v.*
PENN CENTRAL TRANSPORTATION CO., LEROY
ATHERTON AND CITY OF SOUTH BEND

[No. 3-277A36. Filed June 5, 1978.]

*Frank J. Petsche, Matthews-Petsche & Associates,* of South Bend for appellants.

*Edward A. Chapleau, Chapleau, Roper, McInerny, Minczeski & Farabaugh,* of South Bend for appellees.

STATON, J. — Garry Clayton and his father, Willie, filed their complaint to recover damages for personal injuries suffered by Garry when his right foot was crushed between a railroad track and a slow moving train wheel. The railroad company and the city moved for summary judgment, and it was granted by the trial court. Garry Clayton and his father appeal from the granting of summary judgment by the trial court, and we reverse.

On September 4, 1974, Garry Clayton, four years old, and his seven-year-old brother, Willie, Jr., were playing in a city park when a Penn Central freight train passed, traveling at three to four miles per hour. The boys and other children ran down an embankment to the tracks. Meanwhile, Garry tried to jump on the train, could not hold on, and jumped off. Garry was injured when his right foot was run over by the wheels of a freight car. The Claytons filed complaints against Penn Central, the train conductor and the City of South Bend.

After pleadings, depositions and answers to interrogatories had been filed, the trial court granted the railroad's, the train conductor's, and city's motions for summary judgment under Ind. Rules of Trial Procedure, Trial Rule 56.

Summary judgment is only appropriate in cases which raise no genuine issue of material fact and in which the moving party is entitled to judgment as a matter of law. The moving parties, the railroad and the city, must meet their burdens of showing that no material facts are at issue. *Hale v. Peabody Coal Company* (1976), 168 Ind.App. 336, 343 N.E.2d 316.

"In determining whether such a question of material fact exists, only the evidence and inferences therefrom most favorable to the

non-moving party may be considered; all conflicts in the evidence must be resolved against the party seeking summary judgment." *Cordial v. Grimm* (1976), [169] Ind.App. [58], 346 N.E.2d 266, 268.

In considering the evidence, the trial court accepts as true all the facts set forth by the parties opposing the motion for summary judgment. *Johnson v. Motors Dispatch, Inc.* (1977), 172 Ind.App. 285, 360 N.E.2d 224; *Cunningham v. Universal Battery Division—Yardney Electric Corporation* (1976), 170 Ind.App. 166, 352 N.E.2d 83.

Even in cases which involve no factual dispute, summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785; *McGinnis v. Public Service Company of Indiana, Inc.* (1974), 161 Ind.App. 1, 313 N.E.2d 708. We reiterate the observation made in *Wozniczka v. McKean* (1969), 144 Ind.App. 471, 247 N.E.2d 215, 230:

> "Because of the peculiarly elusive nature of the term negligence and the necessity that the trier of facts pass upon the reasonableness of conduct in all of the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where historical facts are concededly undisputed."

Thus, before we could affirm the trial court's granting of summary judgment, we would have to say, as a matter of law, that under no circumstances did Garry Clayton and his father have a valid cause of action against the railroad, the train conductor, and the city upon which the trier of fact could grant recovery.

To recover from the railroad, the train conductor, or the city, Garry Clayton and his father would have to prove negligence. Proof of negligence requires a showing of: a duty on the part of the railroad, the train conductor, or the city; their failure to perform that duty; and an injury to Garry Clayton resulting from such failure. In their complaint, Garry Clayton and his father alleged that the railroad company and conductor were negligent in that they failed to take any steps to prevent Garry's injury (such as building a fence, posting a warning, maintaining a look-out, having a watchman walk with the train), although they were aware that children were present.

As a four-year-old child, Garry Clayton is held to be non sui juris as a matter of law.[1] *Indianapolis Traction & Terminal Co. v. Croly* (1911), 54 Ind.App. 566, 96 N.E. 973, 976. The railroad had to exercise reasonable care with respect to Garry. *Chicago, South Shore and South Bend Railroad Company v. Sagala* (1966), 140 Ind.App. 650, 221 N.E.2d 371, 375. This duty of reasonable care did not necessarily require the railroad company to erect fences, hire a watchman, or post signs. *Indiana Harbor Belt R. Co. v. Jones* (1942), 220 Ind. 139, 41 N.E.2d 361. However, as long ago as 1914, the Appellate Court of Indiana recognized that:

> "where the person on the track is a child non sui juris of whose presence the railroad company has knowledge, actual or constructive . . . the company must operate its cars on such tracks with reference to the probable presence of such child and use some care to avoid injuring it. . . ." *Cleveland, C. C & St. L. Ry. Co. v. Means* (1914), 59 Ind.App. 383, 104 N.E. 785, 792.

Knowledge that children often frequent the vicinity over which a train travels places an affirmative duty on the railroad company to exercise vigilance as to the non sui juris child.

> "Constructive knowledge on the part of a railroad company that children non sui juris are on its tracks, or probably will be on its tracks at a particular place, of necessity carries with it knowledge of the peril and helpless condition of such children, and hence the vigilance or care . . . may become affirmative . . . and require that the company in such case shall, in some degree at least, exercise for the child the care and vigilance which it must know the child is unable to exercise for itself, and must not, by an affirmative act of omission or commission, expose such child to a danger which it knows, or has reason to believe, is unknown to and not understood or appreciated by such child." *Means, supra,* 104 N.E. at 793.

Depending on the facts of the case, the jury may consider the following:

> "If [the operator] is bound to know of the presence of children he must also know from common experience that they are frequently heedless of danger, and he ought not start in motion something that is likely to cause their injury . . . Negligence may be in acts committed or omitted. And if the probable presence of the children

---

1. He is therefore incapable of contributory negligence as a matter of law. *Wozniczka, supra,* 247 N.E.2d at 228.

raises a duty to them or ordinary care, this may be violated before the children arrive upon the premises, by leaving things undone which ought to have been done in anticipation of their coming." *Jones, supra,* 41 N.E.2d at 363-64.

Finally, the duty of reasonable care is not described as absolute, but relative to the facts.

"[I]n the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises." *Chicago, B. & Q. R. Co. v. Krayenbuhl* (1902), 65 Neb. 889, 91 N.W. 880, 883, quoted in *Means, supra* and *Jones, supra.*

Garry Clayton and his father have alleged facts sufficient to show that the railroad had constructive knowledge that non sui juris children played in the vicinity of railroad tracks. At the very least, this knowledge imposed a duty on operators of trains passing over these tracks to keep a look-out for children on or near the tracks as the train passed. Other facts alleged that the train passed the children's park at a rate of only 3 to 4 miles per hour; and that the train operator knew that children often attempted to jump on cars and hang on for a short distance before hopping off, a feat facilitated by the slow movement of the train.

A train passing by is not of itself regarded as an attractive nuisance to children. *Davis, Director of Railroads v. Keller* (1926), 85 Ind.App. 9, 150 N.E. 70.[2] However, a train which moves slowly past a children's

---

2. We decline to adopt railroad's and city's view that the *Davis* case, which involves similar facts, is determinative of the outcome of this appeal. Most importantly, the present case was decided at the trial level by the grant of railroad's and city's motions for summary judgment, without allowing Garry Clayton and his father to present their evidence before a trier of fact. Second, in the *Davis* case, the court relied on the averments that plaintiff was in a position of safety as the train approached, and yet moved to a position of danger as the train passed at twenty miles per hour. However, in this case, a slow moving train was controlled by a conductor who allegedly knew that children often attempted to jump on trains along this particular stretch of track. The jury could have determined that the duty of reasonable care would not be satisfied by mere maintenance of a look-out for children on the tracks as the train approached (which apparently was not done in this case), but was prolonged, with the requirement that the operator attempt to *keep* the tracks (and slow-moving train) clear of children who would be incapable of comprehending the danger that could result from their attempts to hop on the slow-moving train. *See Keane v. Shroeder* (1970), 148 Ind. App. 131, 264 N.E.2d 95.

park is sure to invite interest and attention. The resulting situation could cause non sui juris children to be injured severely, in the absence of a deterrent. It is for a trier of fact to determine whether the train operator's and railroad's vigilance under the facts of this case were sufficient to meet the standard of reasonable care.

As in *Wozniczka, supra,* 247 N.E.2d 215, the trial court's granting of summary judgment circumvented the resolution of genuine issues of fact by a trier of fact, including: the capacity of Garry to understand the danger presented by the slow-moving train; the extent to which the railroad knew of the children's activities near and on the trains; the vigilance which the railroad and the conductor exercised to discover and warn children who might be endangered by the train's passage; and the extent to which the railroad's and the conductor's actions met the duty of reasonable care owed to the non sui juris child, Garry. We conclude that the trial court erred in granting summary judgment for the railroad and the train conductor; we reverse.

Garry Clayton's and his father's complaint against the city alleged that the city was negligent in failing to prevent children from going onto the railroad tracks. Before they could recover damages from the city, they would have to show that the city breached a duty owed them as private individuals. *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733.

Obviously, a city cannot be held liable for all acts or omissions which result in injury to private citizens. *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind. App. 387, 272 N.E.2d 871. Garry Clayton and his father would have to show that the city, in choosing to provide a park, owed a duty to the individual children and parents to make the park a safe place for children to play. Furthermore, they would have to convince a trier of fact that the city's continued operation of a park adjacent to unfenced railroad tracks constituted maintenance of an unsafe condition. The city may be held liable for such negligence. *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568. In *Sherfey,* the injured appellant was held to state a good cause of action against the municipality for violation of a duty:

"To knowingly suffer a pit or depression in the ground containing live coals of fire, the presence of which are concealed or un-

disclosed, to exist in a place where children of immature years may be expected to assemble and play, without taking reasonable steps to warn or protect them against the dangers thereof, may be actionable under the common law of this state." 13 N.E.2d at 572.

In *City of Evansville v. Blue* (1937), 212 Ind. 130, 8 N.E.2d 224, the Indiana Supreme Court held that the trial court could not have determined that a boy's drowning death in a pool was proximately caused by the city's negligence.

"even though the city had a duty to use reasonable care to protect him from his own negligence." 8 N.E.2d at 231.

The court noted:

"The practice of providing artificial pools, or of preparing bathing beaches in natural lakes or streams, so as to induce children of the community to come to them, may well have for one of its purposes the protection of children from the perils of natural streams and water courses where water is of fluctuating depth and where there is a possibility of unsuspected currents and dangers from sudden depths. There is some difficulty in concluding that, because a municipal corporation, in the public interest and for the protection of the young, furnishes them a place to swim, safer than a natural stream or lake, and furnishes some supervision or policing, and guards to protect against the danger of drowning, which is inherent in swimming, it should be held responsible for unfortunate accidents because it has gone but part way and not furnished complete protection against drowning. It is well settled that, where a railroad has regularly maintained a watchman at a highway crossing, where it is not required by law to maintain one, it will be liable for the negligence of a watchman in failing to warn a traveler of approaching danger, and that where one who is acquainted with the custom of maintaining a watchman relies upon being warned, and the watchman has been removed, the railroad will be responsible if he is injured. But in such case the obligation voluntarily assumed is to warn against getting into a position of danger, while in the case of swimmers in a pool it is assumed that they will be in a position of danger, and guards are provided merely in an effort to protect those who are not competent swimmers from getting into water beyond their depth, through their own negligence or by accident, and to assist in rescuing those who, accidentally, or through their own negligence, or the negligence of others, come into difficulties." 8 N.E.2d at 228.

In the present case, the city provided a park for children to play. The children were *not* assumed to be in a position of danger in the park, as they would have been in a swimming pool. The parents of such children could claim that they had the right to rely on the safety of such a facility in leaving their children at the park.

The city had a duty to ensure the park was free of dangerous conditions. Garry Clayton and his father have alleged that the city knew of the danger to children created by the passing trains. Apparently, no fence was erected to forestall the children from playing near the trains.

The facts alleged give rise to genuine issues of fact, including: whether the city park was safe for children, given the proximity of passing trains; whether the city's knowledge of the children's activities near the train required affirmative protective action, such as building a fence; whether the city's failure to construct a fence, or take some other action, proximately resulted in Garry's injury.

We reverse the trial court's grant of the city's motion for summary judgment.

Reversed and remanded for further proceedings.

Garrard, P.J., Concurs in Result;

Lowdermilk, J., (By designation), Concurs.

NOTE—Reported at 376 N.E.2d 524.