George K. PERRY, and Karen
L. Sallows, Plaintiffs,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY, Defendant.

Civ. No. 1:94cv–113.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 19, 1994.

Frederick R. Hovde, Townsend Hovde and Montross, Indianapolis, IN, for plaintiffs George K. Perry, Karen L. Sallows.

John C. Duffey, Russell H. Hart, Adel James Chareq, Stuart and Branigin, Lafayette, IN, for defendants Norfolk Southern Corp., Norfolk and Western Ry. Co.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant Norfolk and Western Railway Company's Motion for Summary Judgment. For the following reasons, defendant's Motion for Summary Judgment is granted.

## SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Matter of Wildman,* 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact."

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether there are genuine issues of material fact, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends there is no genuine issue. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record all material facts to which the non-movant contends there are exists a genuine issue necessary to be litigated. *See Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586,

106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

## BACKGROUND

On May 17, 1993, Norfolk & Western Railway Company (hereinafter N & W) Train 183 departed from New Haven, Indiana, traveling westbound. (Affidavit of Engineer Edward J. Ryan at ¶ 5.) Train 183 consisted of two engines, pulling 110 rail cars. (Affidavit of Trainmaster R.M. Ballinger at ¶ 2.) At approximately 7:30 a.m., N & W's East Wayne Yardmaster contacted Engineer Ryan and Conductor Frederick of Train 183 and advised them to stop the train in order to check some loose metal bands which had been spotted on the fourteenth car. (Ryan Aff. at ¶ 6; Affidavit of Conductor G.C. Frederick at ¶ 6.) The train was stopped near Brooklyn Avenue (Mile Post 148) in Fort Wayne, Indiana. (Ryan Aff. at ¶ 7; Frederick Aff. at ¶ 7.) Engineer Ryan and Conductor Frederick stayed in the engine while the train was stopped. (Ryan Aff. at ¶ 8; Frederick Aff. at ¶ 8.)

Car Foreman David Moore and Car Inspector Lowell Wheeler traveled by truck to the location where the train was stopped, walked to the fourteenth car, inspected and removed the bands, and walked back to where they had parked the truck. (Affidavit of David Moore at ¶¶ 3–6; Affidavit of Lowell Wheeler ¶¶ 3–6.) Neither man saw anyone on N & W's property while they were present at the site of the stopped train. (Moore Aff. at ¶ 7; Wheeler Aff. at ¶ 7.)

At approximately 7:30 a.m. that same morning, plaintiff George Perry, age fifteen years and seven months, and his two friends, Jason Covey and Dale Payne, decided to skip school. (Deposition of George Perry at p. 52.) Instead of attending school, Perry and his companions planned to go to Quimby Village, a shopping center, where they intended to eat and "hang out." (Perry Dep. at pp. 53–54.) To get to Quimby Village, the three young men decided to climb onto a rail car of an N & W freight train, which had stopped on the railroad tracks close to Perry's home on Scott Avenue and also near Brooklyn Avenue. (Perry Dep. at pp. 111–12.) They planned to ride the train to the "River Greenway," where they were going to jump off of the moving train and walk the remaining distance to Quimby Village. (Perry Dep. at p. 60.)

Perry and his two companions climbed onto a stopped rail car that, by Perry's estimation, was somewhere in the middle of the train. (Perry Dep. at pp. 158–59.) Jason Covey was the last of the three to board, and he had to run alongside the train as it began to move. (Perry Dep. at p. 119.) Covey held onto the rail car as he ran, pulling himself up onto the train, and then a short time later jumped off, scratching his hand in the process. (Perry Dep. at pp. 119–20.) When Perry saw Covey jump, he decided to "ride it out." He did not want to jump at this point because he had seen Covey cut his hand when he dismounted the train. Also, the train was moving even faster at this point, and Perry believed that it would be dangerous for him to jump. (Perry Dep. at pp. 120–21.) Perry then observed Dale Payne jumping off of the train, in the process of which he "busted his head" and "rolled." (Perry Dep. at p. 122.) Perry thought it would be even more dangerous for him to jump at that point because the train had picked up more speed. (Perry Dep. at p. 122.) Perry finally jumped at a point more than one mile from where his friends had jumped. Perry's feet ended up in the path of the train's wheels, his legs were severely injured, and ultimately, portions of both of his legs were amputated below the knee.

As the train neared Mile Post 169, an N & W dispatcher contacted the train's crew and informed them that someone had been injured at or near Nuttman Avenue (Mile Post 148.9). The crew was directed to stop the train and inspect it. (Ryan Aff. at ¶ 12; Frederick Aff. at ¶ 12.) Conductor Freder-

ick inspected the train and found blood on the forty-first rail car in the train. (Frederick Aff. at ¶ 13; *see also* Exhibits C–1 to C–6.) At approximately 1:35 p.m., Trainmaster Ballinger inspected the train at Peru, Indiana, and found blood, tissue, and hair on one of the lead axles of the forty-first car, and blood on the bottom of the brake shoes and on wheels on the north side of the same rail car. (Ballinger Aff. at ¶ 3.)

At no time on May 17, 1993, did Engineer Ryan or Conductor Frederick see anyone mount, ride, or dismount any of the cars of Train 183, nor did they see anyone attempt to do so, with the exception of N & W personnel. (Ryan Aff. at ¶ 13; Frederick Aff. at ¶ 14.) N & W first became aware that Perry had been present on its property after the accident occurred, when they were instructed by the dispatcher that someone may have been injured at or near Nuttman Avenue. (Ryan Aff. at ¶ 14; Frederick Aff. at ¶ 15.)

### ANALYSIS

In their complaint, plaintiffs rely on three theories: negligence, attractive nuisance, and dangerous instrumentality. To succeed on a claim of negligence, plaintiffs must prove that N & W owed a duty to George Perry; that N & W breached this duty; and that N & W's breach was the proximate cause of Perry's injuries. Whether N & W owed any duty to Perry is a question of law for the court. *McClelland v. Baltimore & O.C.T.R. Co.*, 123 F.2d 734, 738 (7th Cir.1941); *Jump v. Bank of Versailles*, 586 N.E.2d 873, 875 (Ind.App.1992).

A. *George Perry Was a Sui Juris Trespasser on N & W's Property, N & W Owed No Duty to Perry But to Refrain From Willful and Wanton Conduct After His Presence Was Discovered, And Because Plaintiffs Presented No Evidence Of Wanton or Willful Misconduct And No Evidence That N & W Discovered Perry's Presence Until After the Injury, Plaintiffs' Negligence Claim Fails As a Matter of Law.*

1. *N & W owed no higher duty to trespasser George Perry than to avoid any*

*wanton or willful misconduct after discovering his presence.*

George Perry was injured while on N & W property, and thus, the duty owed by N & W to Perry must be determined by analyzing Indiana's premises liability law. The existence of a landowner's duty to one entering the landowner's property is determined by the entrant's status: trespasser, licensee, or invitee. *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991). A trespasser, similar to licensee, enters the premises for his own convenience, curiosity, or entertainment, but unlike a licensee, a trespasser does not have the landowner's permission. *Id.* at 640. The duty that the landowner owes to the trespasser is to "refrain from willfully or wantonly injuring [the trespasser] after discovering his presence." *Id.* at 639. *See also Kelly v. Ladywood Apartments,* 622 N.E.2d 1044, 1048 (Ind.App.1993).

Perry's presence on the train was unknown to N & W until after the accident. *See* Ryan Aff. at 14; Frederick Aff. at 15. Perry climbed onto a rail car, unknown to N & W, for his own convenience, i.e., to travel to Quimby Village to eat and "hang out." Therefore, he was a trespasser, and N & W owed him no duty except to refrain from wantonly or willfully (intentionally) injuring him after discovering his presence.

As has been stated in Indiana cases for the past century, "the general rule as regards the owner or occupant of premises is that no duty is owed to a trespasser thereon except to refrain from willfully or intentionally injuring him after discovery of his presence." *Chicago, South Shore and South Bend R. Co. v. Sagala,* 140 Ind.App. 650, 221 N.E.2d 371, 374 (1966); *Cleveland C., C. & St. L. Ry. Co. v. Means,* 59 Ind.App. 383, 104 N.E. 785, 788 (1914). *See also Kelly,* 622 N.E.2d at 1048; *Burrell,* 569 N.E.2d at 639. Further,

> a railroad company owes no duty to children living in the vicinity of its switchyards to erect fences or other barriers to prevent their trespassing ... Nor is it obligated to have a watchman to keep children off its right-of-way and cars ... Signs are not required. The tracks themselves are a danger warning.

*Indiana Harbor Belt Co. v. Jones,* 220 Ind. 139, 41 N.E.2d 361, 363 (1942). If the railroad does not owe such a duty to children, it certainly does not owe any such duty to *sui juris* trespassers. Thus, as stated previously, the only duty N & W owed to George Perry was to refrain from wantonly or willfully (intentionally) injuring him after the railroad discovered his presence.

2. *Perry, at age 15 years and 7 months, was sui juris as a matter of law.*

■ In Indiana, children over the age of fourteen are chargeable with exercising the standard of care of an adult, absent special circumstances. *Bailey v. Martz,* 488 N.E.2d 716, 721 (Ind.App.1986) (citing *Smith v. Diamond,* 421 N.E.2d 1172, 1179 (Ind.App. 1981)). *See, e.g., Barbre v. Indianapolis Water Co.,* 400 N.E.2d 1142, 1146 (Ind.App.1980) (stating that the duty owed to a *sui juris* seventeen-year-old was that of a reasonable adult). For example, in *Kent v. Interstate Public Service Co.,* 97 Ind.App. 13, 168 N.E. 465 (1929), plaintiff's decedent was aged fourteen years and five months at the time of his injury. *Id.* 168 N.E. at 467. The court held that he was therefore *sui juris* under the law of Indiana and chargeable as a matter of law with the consequences of his acts as an adult. *Id. See also Indianapolis Railways, Inc. v. Williams,* 115 Ind.App. 383, 59 N.E.2d 586, 590, 591 (1945) (holding that because appellee was fourteen years of age at the time of the accident, he was *sui juris* and chargeable with the consequences of his acts as an adult); *Guilfoyle v. Missouri, Kansas, & Texas Railroad Company,* 812 F.2d 1290, 1292 (10th Cir.1987) (stating that "over 14, absent special circumstances [children] are chargeable with exercising the standard of care of an adult.").

George Perry was fifteen years and seven months old at the time of his injury. Because, under Indiana law, persons over the age of fourteen are considered chargeable with the consequences of their acts as adults, Perry is *sui juris* as a matter of law, absent special circumstances. As discussed *infra,* there is no evidence to suggest that special circumstances exist in this case. Therefore, the same standard applies to Perry as applies to adults, namely that, as a trespasser, N & W owed him no duty except not to willfully injure him after discovering his presence.

3. *Non-sui juris means one who is incapable of comprehending the danger to which he exposes himself by being on or around moving rail traffic; no evidence was submitted that demonstrated Perry was incapable of recognizing danger and exercising care for his safety.*

■ In addition to the conclusion that Perry is *sui juris* as a matter of law because he was over fourteen years old at the time of the injury, he is *sui juris* as a matter of law because his testimony demonstrated that he was capable of recognizing danger and exercising care for his safety. Minors under the age of fourteen have been held to be *sui juris,* as a matter of law, based on their ability to comprehend the danger which resulted in injury. In *Sagala,* a ten-year-old was deemed not to be *non sui juris* because he testified that he was aware of the danger involved in playing on the tracks. 221 N.E.2d at 373. In *Dull v. Cleveland, C., C. & St. L. Ry Co.,* 21 Ind.App. 571, 52 N.E. 1013, 1020 (1899), the court found that a child over the age of seven years, with sufficient intelligence to know the difference between danger and safety, is a person *sui juris,* chargeable as an adult.

Perry has demonstrated that he is capable of recognizing danger and exercising care for his safety. He testified that he understood the dangers inherent in a number of activities, including driving while under the influence of alcohol, approaching stray dogs, walking on thin ice, and climbing onto a truck stopped at an intersection and riding it. (Perry Dep. at pp. 75, 81, 105, 106.) He also testified that he understood the potential dangers of riding and dismounting a moving train. (Perry Dep. at pp. 65, 155.) Perry stated that he knew that climbing onto a moving train was more dangerous than climbing onto a stopped train and that the danger increased as the speed of the train increased. (Perry Dep. at p. 84.) Additionally, he testified to dangers of which he was aware and tried to avoid in climbing onto a train; he tried to get a good grip, made it a

point to keep his feet away from the "coupler," and attempted to avoid placing himself in a position where he could get under the wheels of the rail car. (Perry Dep. at pp. 154, 155.)

Perry was fully capable of understanding the dangers of climbing onto, riding, and jumping from the moving Train 183. He was, in fact, aware of the dangers of dismounting a moving train, as he witnessed both of his friends sustain injuries when they jumped before him. (Perry Dep. at pp. 120–22.) Perry stated that he was in even graver danger when he finally jumped because the train had picked up more speed than at the time when his friends jumped. (Perry Dep. at pp. 122–23.) Like the plaintiffs in *Sagala* and *Dull,* Perry was able to comprehend the dangers involved in climbing onto, riding, and jumping off of a moving rail car. He was in fact cognizant of the danger involved in his action of jumping from a moving train.[1] Perry was capable of recognizing danger and exercising care for his safety, and the fact that he may not have exercised such care does not change the conclusion that Perry was *sui juris* as a matter of law.

 4. *Poor academic performance, truancy arrests, and emotional problems do not constitute "special circumstances," in that these facts cannot be interpreted to state or imply that Perry lacked the mental capacity to recognize danger and exercise reasonable care for his own safety.*

Plaintiffs allege that, "[i]n the 2 years prior to his accident, Mr. Perry had failed all of his classes, been arrested for truancy, and had developed significant emotional problems related to his living situation with his father." (Plaintiffs' Response at pp. 7, 8.) Thus, plaintiffs conclude that a genuine issue of material fact exists as to whether or not there were special circumstances such that George Perry lacked the mental capacity ordinarily found in a fifteen year, eight month old boy. Yet the plaintiffs do not explain

how class failures, truancy arrests, and emotional problems lead to the inference that Perry did not have the mental capacity to recognize the danger of jumping off of a moving train and to exercise care for his own safety; and the case law does not support a finding that these factors may lead to an inference of special circumstances.

The Tenth Circuit was confronted with a similar situation in *Guilfoyle,* 812 F.2d at 1290. In *Guilfoyle,* the plaintiff was playing with two of his friends on a freight train that had stopped on tracks near the boys' homes. *Id.* at 1291. The boys remained on the train when it began to move, and then jumped off of the train one at a time. *Id.* The plaintiff slipped on the gravel as he was jumping, and his legs fell beneath the train's wheels, severely crushing them and necessitating a double amputation. *Id.* at 1291–92. The plaintiff was fourteen years and eleven months old at the time of the accident. *Id.* at 1292. The Tenth Circuit reasoned that, at his age, the plaintiff was chargeable with exercising the standard of care of an adult, absent evidence of mental incapacity. *Id.* The evidence showed that the plaintiff was behind one year in school and had grades in the "C" range. *Id.* The court held that, "[i]n the absence of any evidence that plaintiff's scholastic standing was due to below-normal mental capacity, we must conclude that the district court erred in permitting the jury to apply the attractive nuisance doctrine." *Id. See also Hashtani v. Duke Power Co.,* 578 F.2d 542, 544–46 (4th Cir.1978) (directing a verdict for defendant because evidence that a fourteen year old was a year behind in school and was making grades in the "C" range was insufficient to support a finding of "lack of mental development"); *Moseley v. Kansas City,* 170 Kan. 585, 228 P.2d 699, 704 (1951) (finding that a sixteen-year-old boy has been backward in his work at school is not deemed sufficient [to include him within the attractive nuisance doctrine] unless there is a showing that the backward-

---

1. The fact that there are contradictory statements in Perry's deposition regarding his subjective awareness of the danger of climbing aboard a train does not create a genuine issue of material fact. First, as previously stated, Perry is *sui juris* as a matter of law because he is over fourteen years old. Further, the inquiry now is whether he was *capable* of recognizing danger. Plaintiffs have submitted no evidence that suggests that Perry was not capable of recognizing the danger of climbing aboard the train.

ness in his studies is the result of mental impairment or deficiency).

Like the plaintiff in *Guilfoyle*, George Perry was injured while jumping off of a moving train. At fifteen years and eight months of age, Perry was *sui juris* and presumed to possess the mental capability of an adult in the exercise of judgment and discretion, absent special circumstances. Similar to the plaintiff in *Guilfoyle*, Perry had academic problems. Also like *Guilfoyle*, no evidence has been presented that demonstrates that Perry's scholastic standing is due to below-normal mental capacity that would impede his ability to appreciate danger.[2] Likewise, no evidence has been presented that shows that Perry's truancy arrests and emotional problems are the result of such a below-normal mental capacity.

 If the evidence presented by the non-moving party is merely colorable or is not sufficiently probative, summary judgment is warranted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Evidence of George Perry's poor academic performance, arrests for truancy, and emotional problems resulting from his relationship with his father are not sufficiently probative without evidence of why this affected his mental capacity, i.e., his ability to appreciate the danger of jumping off of a moving train. Because the plaintiffs have not presented specific facts demonstrating the existence of a genuine issue of material fact with regard to George Perry's alleged mental incapacity, this court must grant summary judgment in favor of the defendant on this point. Thus, George Perry was *sui juris* as a matter of law, and N & W owed no duty but to refrain from willfully (intentionally) injuring Perry after discovering his presence.

5. *Perry does not fall within the exception that states that as to an infant non sui juris or an incapacitated adult in peril, of whose presence the railroad has actual or constructive*

knowledge, the railroad has the duty of reasonable care.

 The plaintiffs claim that when a railroad passes through a thickly populated area, and the railroad knows that for a period of time people have habitually crossed upon the tracks at that particular location, the railroad owes the trespasser a duty of reasonable care, and must not merely refrain from willful misconduct. (Plaintiff's Response Brief, p. 7 (citing *Sagala*, 221 N.E.2d at 371; *Means*, 104 N.E. at 785).) This statement does not accurately characterize the holdings of *Means* and *Sagala*. In *Means*, the court stated that, in the case of children, the railroad has a duty to keep a lookout and give a warning to prevent a collision, and failure to exercise ordinary care in doing so may be negligence. *Id.* at 790. The court emphasized that "it is the knowledge, actual or constructive, of the presence on his premises of a *helpless human being in peril* that creates and gives birth to the duty ..." *Id.* at 794 (emphasis added). Thus, the crux of the application of the ordinary or reasonable care standard in lieu of the general rule that the landowner must avoid only willful conduct is that the trespasser must be a child, *non sui juris*, or a helpless adult. *Id.* Because George Perry was *sui juris* at the time he incurred the injury, the exception does not apply to him.

 In *Means*, the court discussed further the limited exception to the rule that railroads have a duty to avoid only willful conduct toward trespassers:

[W]here the person on the track is a child non *sui juris* of whose presence the railroad company has knowledge, actual or constructive, a different rule obtains. In such case the company must operate its cars on such tracks with reference to the probable presence of such child and use some care to avoid injuring it; *otherwise no additional care is imposed on the company over that which it owes the adult trespasser on its tracks.*

2. Perry scored in the "average" national percentile, overall, on an ISTEP (Indiana Statewide Testing for Educational Progress) exam. As the defendant notes, it is likely that Perry's excessive unexcused absences affected his academic rec-

ord. Perry himself stated that he felt his lower middle school grades were attributable to the fact that he did not like to go to school. (Perry Dep. at p. 13.)

*Id.* at 792 (emphasis added). In *Sagala,* the court interpreted the holding of *Means* and concluded the following:

> The rule has evolved that as to an adult trespasser and those who are *sui juris* the owner of a railroad track is generally under no duty to become cognizant or maintain a lookout for such persons. The trespasser comes upon such a right-of-way at his own peril. To this rule, the courts have attached the exception that *as to an infant non sui juris or an incapacitated adult in peril,* the railroad has the duty of reasonable care.

*Sagala,* 221 N.E.2d 371, 375 (holding that, even though the injured plaintiff was a ten-year-old boy, he would not come under the exception because he was "at an age of discretion and aware of the inherent dangers of playing on the tracks."). Because George Perry was *sui juris,* N & W was under no duty to become cognizant of or maintain a lookout for him.

Contrary to plaintiffs' contention, the railroad does not have a duty to exercise reasonable care and keep a lookout for all pedestrians if it is established that neighborhood residents habitually crossed the tracks. As stated in *Sagala,* as to adult and *sui juris* trespassers, the railroad is *"under no duty to become cognizant or maintain a lookout for such persons."* 221 N.E.2d at 375 (emphasis added). The exception applies only to an infant *non sui juris* or an incapacitated adult in peril. Therefore, whether N & W's tracks traveled through a densely populated residential area and whether pedestrians regularly crossed the railroad tracks are not genuine issues of material fact because George Perry was *sui juris* as a matter of law. Thus, N & W was under no duty but to avoid from willfully and wantonly injuring Perry once it discovered his presence.

▇▇▇ To fit into the *Means* exception, in addition to being *non sui juris,* the railroad must have had actual or constructive knowledge of the trespass. "Knowledge that children often frequent the vicinity over which a train travels places an affirmative duty the railroad to exercise vigilance as to the *non sui juris* child." *Clayton v. Penn Cent. Transp. Co.,* 176 Ind.App. 544, 376 N.E.2d

524, 526 (1978). As the court in *Means* noted, the duty to use reasonable care is not present "where the presence of a child on its tracks is merely *possible,* or where such duty of care imposes on the company an unreasonable limitation on the usual and ordinary use of its property." 104 N.E. at 793 (emphasis added).

▇▇▇ Karen Sallows, George Perry's mother, testified that neighborhood children always played on the train tracks behind their house. (Affidavit of Karen Sallows at ¶ 5.) Similarly, Jason Covey testified that he, his friends, and the neighborhood children played along the tracks behind George Perry's house "all the time." (Affidavit of Jason Covey at ¶ 4.) Covey also stated that the train crew would wave to them. (Covey Aff. at ¶ 6.) Further, George Perry stated in his deposition that the train drivers would sometimes wave to him while he was walking on the tracks. (Perry Dep. at pp. 100, 101.) This evidence could lead to a conclusion that the presence of children on the railroad tracks was probable and thus, the railroad had constructive knowledge of George Perry's presence on the railroad track. However, because the court has already determined that Perry was *sui juris* and the exception does not apply as a matter of law, these facts do not create a genuine issue of material fact. Thus, N & W owed Perry only a duty to avoid wanton and willful misconduct after discovering his presence Because plaintiffs have presented no evidence that N & W discovered Perry's presence until after the injury or that N & W engaged in willful misconduct, plaintiffs' negligence claim fails as a matter of law.

Plaintiffs seek recovery on two theories other than negligence: attractive nuisance and dangerous instrumentality. (Defendant's Reply Brief at pp. 13, 14; *see* Plaintiff's Complaint at ¶ 4.) The defendant contended in its Brief in Support of the Motion for Summary Judgment that the attractive nuisance doctrine and dangerous instrumentality doctrine are not applicable as a matter of law and that N & W is entitled to summary judgment on these claims. (Defendant's Reply Brief at p. 14.) The plaintiffs did not respond to N & W's contentions with

regard to the attractive nuisance and dangerous instrumentality claims. This court now finds that there are no genuine issues of material fact with respect to these claims, and N & W is entitled to judgment as a matter of law.

B. *The Attractive Nuisance Doctrine and the Dangerous Instrumentalities Doctrine Are Not Applicable As a Matter of Law.*

The attractive nuisance doctrine and the dangerous instrumentalities doctrine are used to hold landowners to a duty to exercise ordinary or reasonable care toward trespassers on their premises. *Kelly,* 622 N.E.2d at 1048. The following facts must be established to apply the attractive nuisance doctrine:

> (1) The structure or condition complained of must be maintained or permitted upon the property by the owner or the occupant thereof; (2) It must be peculiarly dangerous to children and of such a nature that they will not comprehend the danger; (3) It must be particularly attractive to children to play or sport thereon; (4) The owner must know, or the facts alleged must be such as to charge him with constructive knowledge of the existence of such structure or condition, and that children do or are likely to trespass upon his property and be injured by such structure or condition; and (5) The injury sustained must be the natural, probable and foreseeable result of the original wrong complained of. All the elements must be established before the doctrine applies.

*Id.* at 1049. Further, the doctrine applies only to cases where the danger is latent. *Id.* (citing *Neal v. Home Builders, Inc.,* 232 Ind. 160, 111 N.E.2d 280, 286 (1953)).

The attractive nuisance doctrine is not applicable, as a matter of law, for several reasons. First, the attractive nuisance doctrine is not applicable because it applies "only in favor of children of tender years, too young to appreciate danger." *Drew v. Lett,* 95 Ind.App. 89, 182 N.E. 547 (1932). As the court in *Kelly* noted, "[t]he attractive nuisance doctrine, which distinguishes trespassing children from trespassing adults, recognizes that the child may be incapable of understanding and appreciating all of the possible dangers which he may encounter in trespassing." *Kelly,* 622 N.E.2d at 1048 (citing 62 Am.Jur.2d *Premises Liability* § 270 and § 273 (1990)). Because George Perry is *sui juris* and held responsible as an adult, the attractive nuisance doctrine, which applies only to children incapable of understanding and appreciating danger, is not applicable in the present case.

Also, the great weight of authority, including Indiana case law, has followed the rule that, "the doctrine of attractive nuisance is not applicable to ordinary moving railroad traffic . . . the doctrine of attractive nuisance, in almost all the cases, has been held inapplicable to an action for injury to or death of a child on a moving train." Annotation, *Railroad's Liability for Injury to or Death of Child on Moving Train Other Than as Paying or Proper Passenger,* 35 A.L.R.3d 9, 26, 32–35 (1971). In *Clayton,* 376 N.E.2d at 526, the court found that "[a] train passing by is not of itself regarded as an attractive nuisance." In *Davis v. Keller,* 85 Ind.App. 9, 150 N.E. 70, 72 (1926), the court held the attractive nuisance doctrine inapplicable where a six-year-old boy was playing alongside a train and was struck and injured by the rail cars. The court found that "[t]here was no dangerous and attractive machinery or other device that induced children, including appellee, to visit the place of the accident. There was simply a railroad, with a switch . . ." *Id.*

Additionally, the attractive nuisance must be of such a nature that children will not comprehend the danger. As discussed *supra,* George Perry was *sui juris* and thus presumed capable of comprehending the danger. Also, according to Perry's testimony, he did in fact understand the danger in jumping off of the speeding train. Thus, the attractive nuisance doctrine is also inapplicable on this basis.

Further, the dangerous nature of climbing onto and jumping off of moving rail cars is not latent, hidden, or concealed, but is patent, open, and obvious. In *Jones,* the court recognized that "signs are not required," and "the tracks themselves are a danger warning." 41 N.E.2d at 363. "The overwhelming weight of authority [supports the notion that

the attractive nuisance doctrine] does not apply as a matter of law in cases where child trespassers are injured by moving trains because a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children." *McKinney v. Hartz & Restle Realtors, Inc.,* 31 Ohio St.3d 244, 510 N.E.2d 386, 389 (1987). Thus, for the foregoing reasons, the attractive nuisance doctrine is inapplicable as a matter of law.

The dangerous instrumentalities doctrine "imposes a duty to use reasonable care upon one who maintains something dangerous to children and adults alike and so exposed that there is a likelihood of their coming in contact with and being injured by it, notwithstanding that they may be trespassers." *Kelly,* 622 N.E.2d at 1048, n. 1 (citing RESTATEMENT OF TORTS (SECOND) § 342). Section 342 states that a possessor of land is liable for harm caused by a dangerous condition on the land only if:

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm ... and should expect that [the licensees] will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

The Commentary to § 342 states that if the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them of the full extent of the risk. In *Neal,* 111 N.E.2d at 291, the Indiana Supreme Court approvingly quoted a Kentucky case which held that a moving rail car was not a dangerous instrumentality. *Id.* (citing *Smith v. Hines,* 212 Ky. 30, 278 S.W. 142 (1925)). The court in *Smith* concluded that:

In the case now before us there was no dangerous mechanism or instrumentalities about the car. The handholds and ladder complained of were not dangerous.... The child was not caused to fall from the car by the movement of any of its parts which, to his indiscreet judgment, seemed to be safe; he fell by his own inadvertence and misfortune.

*Smith,* 278 S.W. at 143. Courts have also held that the dangerous instrumentality exception is not applicable to a moving freight train because it is not a hidden danger, but that "a train is an open and obvious danger to which this exception cannot be applied." *McKinney,* 31 Ohio St.3d 244, 510 N.E.2d at 389, 390 (1987). *See also Preston v. Baltimore & Ohio R. Co.,* 49 Ohio App.3d 70, 550 N.E.2d 191, 195, n. 3 (1988) (finding that a temporarily stopped freight train is not a hidden danger, especially where plaintiff indicated that he anticipated that the train would move shortly).

Because the dangers involved with a moving freight car are obvious, and not latent, George Perry, *sui juris,* was apprised of the risk involved in jumping from the moving train. Also, Perry testified to being aware of the dangers of jumping off of the moving train. (Perry Dep. at pp. 65, 155.) Thus, for the foregoing reasons, the dangerous instrumentalities doctrine is inapplicable as a matter of law.

*CONCLUSION*

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.